The B.F. GOODRICH COMPANY, et al.

v.

Harold MURTHA, et al.

v.

RISDON CORPORATION, et al.

No. N–87–52 (PCD).

United States District Court,
D. Connecticut.

Jan. 12, 1993.

Mark Mininberg, New Haven, CT, William A. Butler, Powell, Goldstein, Frazer & Murphy, Washington, DC, for defendants.

John J. O'Leary, Jr., Pierce, Atwood, Scribner, Alan, Smith & Lancaster, Portland, ME, for the Laurel Park Coalition.

## MEMORANDUM OF DECISION RE: LAUREL PARK COALITION MOTION FOR LEAVE TO FILE THIRD PARTY COMPLAINT

DORSEY, District Judge.

The Murtha interests, consisting of family members and legal entities owned, controlled and operated by family members, owned two sites used for dumps, and contracted to accept waste and to haul waste generated by others to those sites. One site was Beacon Heights. The other site was Laurel Park. Waste from one source was not always deposited in the same site. Hazardous substances ("HS"), as now defined, were not excluded from either site. Congress required the Environmental Protection Agency ("EPA") to identify hazardous sites, determine the necessary remediation and undertake same and/or identify the responsible parties and seek remediation by them, voluntarily or involuntarily. Consent decrees applicable, separately, to the two sites, have established primary responsibility for remediation which is in process at each site. The process has, however, taken twelve years. Unresolved is adjudication of claims for contribution to the clean-up cost. The manipulation of the process, insensitive to litigation costs, has protracted it at substantial cost to parties without as of yet a just allocation of the remediation cost.

Coalitions of responsible parties have consented to decrees specifying the remediation for each site. The Laurel Park Coalition ("LPC") seeks contributions, under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601 *et seq.*, as is authorized, from disposers of HS, 42 U.S.C. §§ 9607(a), 9613(f).

The coalition has moved to add, as third parties defendant, ("TPDs") 1151 prospective contributors. The coalition has been urged to negotiate such claims since responsibility cannot be defined with precision and proof of liability and each liable party's contribution, to be determined under § 9613(f)(1), would be difficult, time-consuming and expensive. The pending motion adds a major factor, *i.e.,* the magnitude of the claims the coalition proposes to prosecute. In anticipation of this problem, it was determined that the coalition would not be given carte blanche to inject into the court's caseload 1151 individual suits, each with the potential for case discovery, pleadings and trial. Instead, the coalition will be allowed to implead each party against whom a claim is sufficiently substantiated, legally and factually. A claim would thus come to be processed by the court if such basis is first shown. The court and parties are thus relieved of the time and expense of processing claims not so substantiated. The coalition has objected to the process and moved to eliminate the special master who has attempted to mediate both coalitions' contribution claims. The order does not preclude an opportunity to present claims substantiated under the test in Rule 11, Fed. R.Civ.P. The objection to the special master received the consideration it merited when the Mandamus seeking his removal was accorded a one-word denial by the Court of Appeals.

The request for leave as to the 1151 asserted contributors was reviewed by the special master in accordance with Case Management Order, # 1. He recommended its denial. The matter is now presented for *de novo* review and determination by the court.

LPC characterizes those from whom/which contribution is sought as generators, that is individuals, municipalities, entities, businesses and commercial and industrial sources of waste characterized as hazardous by EPA in 40 C.F.R. Part 261 or defined as such in 42 U.S.C. § 9601(14)(B), (C) ("HS"). The substances relied on by LPC are noted in Table 1 of its compliance report dated February 14, 1992 ("CR"). Table 2 sets forth the HS generated by types of businesses and whether the reliance is on § 9601(14)(B) or (C). CR at 6. Table 1 is based on the affidavit of Dr. Kirk Brown, CR Ex. A, who purports to identify HS specified under CERCLA in municipal solid wastes ("MSW"). CR at 5, n. 6. LPC claims that each Named Party, among the 1151, falls into one of the categories listed and thus "probably generated and disposed of one or more of the substances" listed and necessarily within § 9601(14),[1] because those in each category typically generated enumerated HS. CR at 5. The authority cited for that proposition are two EPA documents, *Does Your Business Produce Hazardous Waste? Many Small Businesses Do,* dated April 15, 1990 and attachments, and *Understanding the Small Quantity Hazardous Waste Rules,* dated September 1986. Neither is provided nor is any substantiation furnished for either as accepted authority for the facts or premises asserted therein.

LPC relies on the following claims of fact:

a) Waste from household, commercial, local government or industrial sources "likely contains one or more hazardous substances listed in Tables 1 and 2."

b) MSW contains HS listed in Table 1.

c) HS listed in Table 1 are found in household products commonly found in MSW.

d) Commercial/industrial businesses likely generated and disposed of[2] the CERCLA HS listed in Table 1.

e) The business activities in Table 2 typically generated waste streams containing CERCLA HS.

f) The CERCLA HS in EPA identified waste streams, as per Table 2, are commonly found in municipal landfills.

---

1. § 9601(14), as relied on by LPC, provides:

    The term "hazardous substance" means.... (B) any element, compound, mixture, solution, or substance designated under section 9602 of this title, (C) any hazardous waste having the characteristics identified or listed pursuant to section 3001 of the Solid Waste Disposal Act [42 U.S.C.

§ 6921] (but not including any waste the regulation of which under the Solid Waste Disposal Act [42 U.S.C. § 6901 et seq] has been suspended by Act of Congress)....

2. Liability may be premised only on disposal of HS. § 9607(a).

g) Acetone, benzene, 2–butanone, 1,1–dichloroethane, phenol, chloride, ethylbenzene, methylene, toluene, vinyl chloride, 1,1,1–trichloroethane and xylene are found in MSW leachate.

h) Laurel Park is a typical MSW landfill.

i) The HS in g) are found in products and wastes commonly taken to municipal landfills between 1947 to 1987.

j) The leachate at Laurel Park contains HS in g) in ranges common to MSW landfills.

k) Statements of the municipalities and government agency collectors among the 1151 describe a wide range of HS generated and disposed of by them as in CR Ex. A.

l) Each municipality, but three, has conceded, in documents filed in court, the disposal of MSW at Laurel Park, that MSW contains HS and that their MSW was no different from other MSW. Waterbury, Woodbury and Shelton have not so conceded.

m) Businesses which use oils or the like, dyes, paints, ink, thinners, cleaning fluid, solvents, pesticides or related chemicals including such as dissolve materials, flammables, irritants, materials labelled as hazardous, adhesives, acids, caustics and materials which water causes to bubble, fume or change color, commonly generate HS.

n) Businesses almost always generate HS if they repair or maintain automobiles, electroplate, process metal, print or copy documents, clean or launder, process or print photographs, do laboratory work, build or construct, control pests, manufacture or process chemicals, pesticides, textiles, dyes, fabrics, wood, furniture, or cosmetics, treat lawns or gardens with chemicals or operate a foundry.

o) The assertions of fact in the two EPA publications.

p) Small quantities of HS may be, and have been disposed of at municipal landfills.

q) Under one-half of the original documents related to the operation of Laurel Park have been reviewed.[3]

■ r) EPA has determined that MSW may include small quantities of HS such as from paint residue, pesticides, pigments, adhesives plastic residue resins, batteries and non-ferrous metals. EPA has thus given attention to HS in MSW in policies and publications.[4]

s) There are studies purported to constitute expert opinion that certain activities are likely to generate HS which finds its way into municipal waste streams.

■ In response to court order Item 4 which required recitation of the facts claimed to show disposal of HS on which each claim for response costs is based, the coalition listed studies, reports, an affidavit of Dr. Brown, the EPA Record of Decision and a narrative for each claimed third party defendant. The bibliography does not comply with the order. Reference to a document does not recite facts. Substantiation of a claim by reference to specifics in a document is the responsibility of counsel.[5] If the coalition and counsel

---

**3.** It is difficult to accept the premise the coalition seems to be advancing, that a wealth of materials exists, much of which remains to be reviewed, since that review has been in process by the EPA for over 12 years, during which time the EPA has been seeking to impose the same responsibility as does the coalition, and this suit has been pending for over five years during most of which the records referred to have been available to the parties.

**4.** The coalition stresses the manifestation of EPA's determination that MSW may contain HS, thus subjecting a municipality to liability under 42 U.S.C. § 9607. It is true that any HS, defined by § 101(14) and identified in Table 302.4 of 40 C.F.R. part 302, *may* give rise to CERCLA liability but does not necessarily do so for two reasons. The congressional scheme vests the courts with no responsibility for such determinations. EPA's articulations do not constitute evidence on which to base a finding of liability on the part of a particular municipality. Further, EPA has the initial authority, responsibility and obligation to investigate and identify the potentially responsible parties ("PRPs") in relation to the HS originating from a particular site, and it has not so found any of the municipalities here sought to be found liable. This is quite consistent with the holding in *B.F. Goodrich v. Murtha*, 754 F.Supp. 960 (D.Conn.), *aff'd*, 958 F.2d 1192 (2d Cir. 1992).

**5.** This case originated with an EPA investigation started over twelve years ago. The EPA report was filed in 1988, and is the genesis of the make-up of LPC. Since this case was filed, counsel have known of the right to contribution and the basis for obtaining same. The suggestion of a

have not sufficiently investigated to insure that a particular complaint would be well-grounded in fact, Rule 11, Fed.R.Civ.P., then permission to file that complaint will be denied. To do otherwise would subject a TPD to the necessity of defending a claim without apparent merit. Analogous to the principle that a proposed amendment may be rejected if it does not correct a previously found deficiency, 3 Moore's Federal Practice ¶ 15.-15, 15–144, rejection of a proposed complaint which is unsustained by facts is not inappropriate. The court may sanction an attorney for signing a pleading "where, after reasonable inquiry a competent attorney could not form a reasonable belief that the pleading is well-grounded in fact." *Eastway Const. Corp. v. City of New York*, 762 F.2d 243, 254 (2d Cir.1985). It would be illogical if the court could not, in appropriate circumstances, prevent filing of a pleading not well-grounded in fact. This procedure will not prevent LPC from presenting any claim, well-grounded in fact. This is not inconsistent with a motion to dismiss, which is judged on whether the plaintiff can prove any set of facts in support of its claim, for if so, dismissal is improper. *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Fischman v. Blue Cross & Blue Shield of Conn.*, 755 F.Supp. 528, 530 (D.Conn.1990).

### I. *Discussion*

Eighteen municipalities/government agencies can be lumped together for discussion as can non-municipal generators and transporters. LPC is afforded some leeway because it is being required to clean up a site that has been operated for many years. Precise proof of who put what onto the site, in what amount, over what period of time is not readily available. One seeking contribution must show that a party disposed of HS, as defined in § 9601(14). 42 U.S.C. 9607(a)(3), *see* § 9613(f)(1).

The issue here is not the merits of LPC's claims but the most efficient and fair method of determining their validity. Rule 11 requires inquiry, and that a pleading be well-grounded in fact. Here, instead of reviewing an assertion of a right to contribution after a

third party complaint is filed, a review is being accomplished before the filing to avoid flooding the court with claims not shown to be well-grounded in fact. Thereby, judicial efficiency and use of funds for remediation will be preserved. Claims sufficiently supported in fact will be afforded time and effort to resolve their merit. The question is whether the record reflects such inquiry and fact. It is assessed against the twelve plus years since commencement and ensuing inquiry by EPA, the parallel Beacon Heights site processing under CERCLA, the several years of inquiry by the principals of LPC and the nearly two years of LPC's existence. Its submission has been evaluated in terms of admissible evidence (as to each potential TPD) but with an eye to whether discovery might reasonably flesh out a prima facie claim. Nonetheless, LPC has been held to show that investigation demonstrated well-grounded facts in support of each contention that a TPD could be liable for contribution.

■ a) Municipal/government agency generators. These eighteen potential contributors have not been shown to have disposed of any specific HS, but LPC asserts a so-called generic argument based on the opinion of Dr. Brown. As discussed in *B.F. Goodrich, Co. v. Murtha*, 754 F.Supp. 960, 968 *et seq.*, (D.Conn.1991), *aff'd.*, 958 F.2d 1192 (2nd Cir. 1992), Brown is offered as an expert, of which there is evidence. He claims to have studied the make-up of MSW and found HS proliferates therein, eleven of which are found in the Laurel Park leachate. It is further suggested in the record that MSW was generated by the eighteen such that it could not be found as a matter of law that their MSW did not contain HS. A factual basis is required before an expert's opinion is admissible against a particular party. Dr. Brown's evidence, though not conclusive, could be admissible against each of the eighteen.

Waterbury, Woodbury and Shelton contest inclusion of HS in their MSW and at Laurel Park. Dr. Brown's evidence suffices under Rule 11 to permit the claim to be pursued against each.

late opportunity to obtain information, Gordon

affidavit, CR, Ex. C is without merit.

As the Rule 11 threshold has been met, LPC may pursue its claims against the municipalities. However, as assignee of the claims of the Murthas and, as a member of LPC, Uniroyal has a pending claim against the municipalities in these proceedings. LPC need not file duplicative claims, but will be permitted to prosecute its claims for contribution from them in conjunction with the Beacon Heights coalition. This will not preclude supplementation of the present pleadings if good cause is shown, but the present claims against them will hereby be deemed to embrace LPC's claims for remediation cost contribution. To the extent any municipality is attacking the claims for contribution by pending motion(s), such motion(s) will be deemed directed against LPC's claims.

■ b) Non-municipal generators. LPC correctly notes that the test to be applied is whether the proposed third party complaint, as against each proposed TPD, 1) is based on a reasonable inquiry, 2) is well-grounded in fact, and 3) is warranted by existing law. The third element is present. The other two elements must be discussed in relation to each TPD. LPC relies on Dr. Brown's analysis and a "generic" character, or quality, to the waste from each TPD. Dr. Brown's opinion is not based on evidence of one or more HS in the actual waste [6], but by characterizing each source's waste from the purported make-up of waste from comparable sources. Reliance on the decision allowing Dr. Brown's opinion against the municipal generators is misplaced. The foundation for his opinion is not controlling for non-municipal generators. A foundation for his opinion is required for each generator before it can be found, as to each, whether the claim for contribution is well-grounded in fact. While discovery may develop facts, 5A Wright and Miller, *Federal Practice and Procedure,* § 1335, at 65, discovery is not intended to provide the first substantiation of whether a cause of action is well-grounded in fact. If the threshold proof is met, LPC can refine its proof by discovery. LPC misguidedly suggests that the test is whether the claim is plead with sufficient particularity, *U.S. v.*

*Azrael,* 774 F.Supp. 376 (D.Md.1991) in which, however, it was noted "[t]he Federal Rules do not require a claimant to set forth *in explicit detail all facts* which underlie his or her claim." *Id.* at 380 (emphasis added). So also entitlement to discovery to confirm a reasonably held belief, see *United States v. New Castle County,* 642 F.Supp. 1270, 1275 (D.Del1986), is conditioned on an equivalent to the Rule 11 requirement that the elements for contribution, 42 U.S.C. § 9607, are well-grounded in fact. This requires a review of the evidence offered against the elements of CERCLA liability, 42 U.S.C. § 9607(a)(3), as invoked by 42 U.S.C. § 9613(f)(1).

LPC has characterized its brief as stating the basis for its claims against the 1151, replying to objections thereto under dates of July 24, 1992 and August 24, 1992.

The following comments apply to LPC's claims.

■ a) That a party generates MSW is insufficient. Disposal, not generation, creates liability. § 9607(a). A municipality collects waste from many sources. That MSW has been shown to contain various HS in patterns generally applicable to MSW permits an inference that those patterns may be applied to individual communities. That inference is not suggestive of what is to be found in the waste of individual generators.

■ b) The fact that studies suggest that, cumulatively, a particular business generates HS does not prove that one engaged in that business necessarily, or probably, generates HS unless it is shown that everyone so engaged generated HS, or that that business could not be conducted without generating HS. Further it would have to be shown that a TPD was engaged in that business as it was defined by the studies.

c) Generation of HS is not determinative of disposal of HS in any particular manner or place.

d) A "shipment of waste" as used by LPC, but not otherwise defined, describes neither the characteristics nor the amount of waste involved. That a TPD did business with a

---

**6.** A substance is defined as hazardous by 42 § 9601(14), invoking the designations of EPA under 42 U.S.C. §§ 6921, 9602. *See* 40 C.F.R. Ch. 1, Part 302, Table 302.4.

Murtha entity proves neither the quantity, the character nor the deposit site of waste. Evidence of "at least" a specified number of shipments suggests nothing more than the number of shipments specified.

e) The phrase "without limitation" will not be construed to add substantive support to a claim as well-grounded in fact.

f) The Uniroyal Position Paper, dated December 29, 1989, for which no substantive probative merit has been shown, does not add substantive support to a claim as well-grounded in fact. The April 10, 1991 Uniroyal Response to a Case Management Order does not sustain a claim as well-grounded in fact. That Uniroyal may have linked a TPD to depositing of HS has no probative merit.

g) Potential TPDs are not described as would permit a finding of engagement in a business described as a source of HS. Some TPDs' names do not disclose the nature of their businesses.

h) Potential TPDs whose business may be inferable by their name, or common knowledge, do not always fall into one of the categories which deal with products as per CR Ex. D, Table 1 nor one of the types of businesses listed in Table 2.

i) Although not identified, nor qualified, original source documents are treated as business records. As not otherwise described, "nontransactional documents" are not considered a basis for finding well-grounded facts.

j) A potential TPD's acquiescence in the proposition that it generates waste as does a particular business does not suggest that it included HS in waste disposed of through Murtha absent some showing that such could be found to have been the case.

k) An EPA designation as a PRP reflects a finding, after an administrative process, that the PRP disposed of HS in the site. See CR Tables 1 and 2.

l) The naming of a TPD by the Beacon Heights Coalition ("BHC") and its assertion that a TPD generated a type of waste is not probative either that that TPD generated HS nor that any such HS came to be disposed of at Laurel Park. Nor will a BHC pleading

that a TPD generated waste "which contained CERCLA Hazardous Substances" be considered probative of such containment. An unfounded assertion is not deemed to prove that a claim is well-grounded in fact.

m) That a lawyer's review of documents ("Box 36") confirmed a TPD's arrangement to dispose of waste through Murtha does not suggest that a claim against that TPD is well-grounded in fact.

n) Though not considered determinative, major discrepancies are recited in the substantiation for a claim against a TPD who, per original documents, disposed of two shipments, per other documents did business with Murtha over a period and per Uniroyal disposed of over 300,000 gallons of waste at the site.

o) That a TPD did business with one of the Murtha entities over a period which included a time when Laurel Park was the only disposal site in operation, supports no conclusion as to the quantity nor characteristics of waste disposed of at Laurel Park though probative of some waste having been so disposed.

p) That an entity disposed of one type of waste and/or another is not suggestive of evidence that it can be definitively categorized as either. That a type of business may generate HS is not determinative of whether it disposes of all of its waste through a single conduit.

q) Nominal amounts of waste from a source do not necessarily conform to patterns of waste attributable to sources engaged in the same type of business.

r) The absence of evidence of breakdown of products that contain HS and the absence of identification of the product as a HS by the EPA precludes a finding that disposal of that product constitutes disposal of HS.

s) An admission of disposal of a type of waste, does not admit disposal of HS as part thereof, unless specifically admitted, despite an opinion that such type of waste contains HS.

t) A manufactured article containing a HS but which does not exhibit Hazardous Waste ("HW") characteristics does not

constitute HW. 2 Cooke, *The Law of Hazardous Waste* § 2.04[3][c][iv] at 2–88. EPA has stated:

> that the materials listed in § 261.33 [of 40 CFR] include only those commercial chemical products and manufacturing chemical intermediates that are known by the generic name of the chemicals listed in paragraphs (e) and (f) of that section. Manufactured articles that contain any of the chemicals listed in paragraphs (e) and (f) are rarely, if ever, known by the generic name of the chemicals they contain and, therefore, are not covered by the § 261.33 listings. Should the Agency find it necessary to list any manufactured articles as hazardous waste, it will initiate rulemaking to add those articles to § 261.33. 45 Fed. Reg. 78541 (Nov. 25, 1980).

Absent a finding by EPA that a particular product warrants classification as a HS, 42 U.S.C. § 6902, it cannot be found that the product, notwithstanding its constituent elements, is an HS or HW. *United States v. Serafini*, 750 F.Supp. 168 (M.D.Pa.1990). To be considered hazardous, a constituent must have caused "the Administrator to list the hazardous waste [in which it is contained] in part 261, subpart D, of [chapter I of 40 CFR] or [be listed] in table 1 § 261.24 of [chapter I of 40 CFR]." 40 CFR § 260.10. As defined, and relied on herein, HS is either an EPA designated "element, compound, mixture, solution or substance," 42 U.S.C. § 9601(14)(B) or HW having characteristics listed under one of several statutes. 42 U.S.C. § 9601(14)(C).

u) LPC's repeated reference to waste disposed of in terms of gallonage does not demonstrate the basis nor the method of what appears to be a conversion of waste to a liquid measure.

v) In and after 1980, only the Laurel Park site was used. That waste from a TPD was disposed of at Laurel Park is proven by disposal through Murtha only if, and to the extent, Laurel Park was the only site in use at or during the disposal.

w) There are marked discrepancies as to waste disposal by a TPD. Such discrepancies raise doubts as to claims of large amounts of waste disposed of but have not weighed against consideration of all claimed sources of information.

x) The allegation that a TPD is obliged to contribute to the Beacon Heights remediation detracts from the TPD having disposed of waste at Laurel Park. It precludes a determination that that TPD's waste came to Laurel Park in any specific quantity.

y) The assertion, in the Uniroyal Position Paper, that a TPD disposed of gallonage at Laurel Park is not substantiated.

z) The suggestion that a TPD disposed of waste through Murtha outside the period when only Laurel Park was in operation cannot be a basis for finding that such TPD's waste necessarily ended up in Laurel Park. Documentation in a number of cases that such waste did end up at Laurel Park raises questions about any inference that waste not so documented did in fact end up there.

aa) Disposal of "contaminated soil" is not probative of the presence of HS as the contaminant.

The Rule 11 test will not be met without showing that a particular TPD was reasonably likely to have generated waste in the pattern opined by Dr. Brown. There is no purpose served, consistent with preserving the court's resources and with the right of a TPD to be protected from a baseless claim, by allowing a claim to be filed if the only evidence would not be probative of a TPD's liability under § 9607(a). LPC's proffer against the generators, CR Ex. D, has been reviewed. Appendix 1 hereto lists TPDs against whom/which LPC will be permitted to file a third party complaint. Appendix 2 lists TPDs against whom/which LPC will not be permitted to file a third party complaint for want of a showing of a basis for a claim for contribution which is well grounded in fact. These determinations have been made after a review of LPC's moving papers for a showing of a basis, well-grounded in fact, for each claim, applying the factors, rules, law and consideration discussed above.

## II. *Conclusion*

LPC's motion for permission to file third party claims is granted in part and denied in

part in accordance with the discussion of the claims asserted as set forth above.

SO ORDERED.

## APPENDIX 1

TPDs against whom/which the coalition has demonstrated a claim well grounded in fact:

A-37  American Chemical & Refining Co., Inc.

A-38  American Refuse Co.

A-44  Anaconda Company (a/k/a Anaconda Brass, Anaconda American Brass)

A-45  Anaconda Metal Hose Company

A-56  Armstrong Rubber Company

A-63  Ashmore Trucking (a/k/a Thomas Ashmore Trucking Co.)

A-64  Ashmore, John H.

B-7  B. Swirsky & Co.

B-22  Beacon Falls, Town of

B-37  Bethany, Town of

B-42  Big Apple Wrecking Corp.

B-57  Borough of Naugatuck

B-60  Bosco's Automotive Center

B-66  Bristol Flowed Gasket Co.

C-40  Chesebrough Pond's, USA

C-79  Connecticut Manufacturing Co., Inc.

C-91  Connecticut, State of (State of Connecticut Military Department)

E-10  Eastern Company, The

E-19  Engineered Sinterings & Plastics, Inc.

E-21  Ensign–Bickford Company, The

G-17  Gerald Metals, Inc.

G-21  Gilmour Mfg. (a/k/a Seymour Smith & Sons)

H-2  Hamden, Town of

H-15  The Heminway Company

L-41  Litton Industries, Inc. Winchester Electronics Division

M-19  Manaford Brothers, Inc. (Connecticut Waste Processing)

M-27  Marian Inc.

M-62  Middlebury, Town of

N-8  National Guard Armory (a/k/a Naugatuck Armory)

N-52  New Haven, City of

O-16  Orange, Town of

P-39  Plymouth, Town of

S-45  Seymour, Town of

S-51  Shelton, City of

T-13  Thomaston, Town of

T-32  Traver's Electric Motor Co., Inc.

T-34  Turner Construction Company (General Reinsurance)

W-33  Watertown, Town of

W-37  Wells Benrus Corp. (a/k/a Remington Technology, Inc.)

W-44  Westport, Town of

W-68  Woodbury, Town of

## APPENDIX 2

TPDs against whom/which the coalition has not demonstrated a claim well grounded in fact:

A-1  A & P Tea Co.

A-2  A-1 Gas Station

A-3  A. Tamborini & Sons (also spelled A. Tamburini)

A-4  A.A. Pandozi, Inc. (also spelled A.A. Pandazzi)

A-5  A.C. Lift Service

A-6  A.G. Associates (also spelled A & G Associates)

A-7  A.K.D., Inc. (a/k/a AMES)

A-8  A.R. Deburring, Inc.

A-9  ACI Country Manor

A-10  ACMAT Corp.

A-11  API Data Centers

A-12  ARCO

A-13  ARCO (Atlantic Richfield Company)

A-14  ARCO Metals

A-15  Absolutely Wholesome

A-16  Accu–Grind Carbide (a/k/a Accu–Grind Carbide Tool)

A-17  Accurate Paperboard

A-18  Action Refuse

A-19  Adam's Service Station (a/k/a Wayne Adams Chevron)

A-20  Adams, Mrs. Wayne

A-21  Adrienne's Kitchen (also spelled Adreienne's Kitchen)

A-22  Adrian's Market (also spelled Adrienn's Market)

A-23  Advance Tire Company (a/k/a Advance Tire Service)
A-24  Al's Hot Dogs
A-25  Al's Seafood
A-26  Aladdin Sign Co.
A-27  Albatis Brothers, Inc. (also spelled Albaitis Bros. Const. Co.)
A-28  Albert Bros., Inc.
A-29  Albreada Refuse, Inc.
A-30  Alloy Foundries
A-31  Alu Corp. (a/k/a A.L.U. Corporation)
A-32  Ambion Corp.
A-33  Amerada Hess Corp.
A-34  American Auto Parts
A-35  American Bank Stat. (a/k/a American Bank Stationery)
A-36  American Brass Employees Association of Waterbury, Inc.
A-39  American Roofing Company
A-40  Americap Co.
A-41  Ames Department Stores (a/k/a A.K.D.)
A-42  Amet Inc.
A-43  Amodeo's Market
A-46  Anchor Fasteners
A-47  Anderson Auto Electric (a/k/a Buell Industries)
A-48  Anderson Construction Co.
A-49  Androphy's Furniture Co.
A-50  Angelo's Pizza (a/k/a Angelo's A-Pizza
A-51  Annelli Construction Co.
A-52  Ansonia Steel Fabrication Co. (a/k/a Ansonia Copper & Brass, Inc.)
A-53  Raymond Antonacci
A-54  Arco Management Group
A-55  Armand's Auto Service
A-57  Arnold's Thrift Bank
A-58  Eric E. Arsan Refuse
A-59  Art Conn Building
A-60  Artistic Coiffures
A-61  Ash, Ed
A-62  Ashlar of Newton
A-65  Assembly, The
A-66  Atlantic Richfield Company
A-67  Atlantic Service Station
A-68  Augelli, Anthony
A-69  Aurora Lites
A-70  Auto Parts of Connecticut
A-71  Auto-Swage Products, Inc.
A-72  Avco Rent-A-Bay
A-73  Avenue Cleaners
A-74  Avenue Glass & Aluminum
A-75  Awisco Co.
A-76  Axil Corp. (f/k/a Homer Bronson Co.)
A-77  Axons, Inc.
B-1   B & C Construction
B-2   B & C Enterprises
B-3   B & M Railroad
B-4   B & N Package Store
B-5   B & P Auto
B-6   B & S Car Wash
B-8   B.H.E., Inc.
B-9   B.T. Realty
B-10  B.W. Tool, Inc.
B-11  BBC Corp.
B-12  Backo's Gulf Station
B-13  Baldelli, John
B-14  Bang, Thomas
B-15  Bank of Boston
B-16  Barlow Pump Company
B-17  Baskin Robbins, Inc.
B-18  Bea's Flower Shop
B-19  Beacon Falls Business Park
B-20  Beacon Falls Garage
B-21  Beacon Falls Youth Center
B-23  Beacon Hill Condo
B-24  Beacon Hills Apartments
B-25  Beacon Outing Club
B-26  Beacon Realty
B-27  Beacon Reel Co.
B-28  Beacon Spirit Shop
B-29  Beacon Valley Condominiums
B-30  Beefsteak Charlie's
B-31  Belline, Lisa
B-32  Benedetti, Ron
B-33  Benvento Restaurant
B-34  Berkshire Builders
B-35  Bethany Public Schools
B-36  Bethany West, Inc.

B-38 Betkoski, Edward

B-39 Bev's Variety Store

B-40 Bickford Restaurant

B-41 Biener's Sport Shop

B-43 Bill Scheith (Gas Station)

B-44 Birds of a Feather

B-45 Blakeslee Apaia Chapman

B-46 Blue Jay Builders

B-47 Blue Note Lounge

B-48 Bob the Builder

B-49 Bob's Auto Body Shop

B-50 Bob's Surplus

B-51 Body Form Toning

B-52 Boliden Metech, Inc.

B-53 Bonacquist Construction Corp.

B-54 Bonvincini Building

B-55 Borghesi Construction (a/k/a Borghesi Building & Engineering Company)

B-56 Borgnis, Bernard

B-58 Bosco & Braun Power Equipment

B-59 Bosco Glass

B-61 Bouffard Metal Goods

B-62 Bounce Inn Cafe

B-63 Bracci, Bill

B-64 Brass Rail Restaurant

B-65 Breen's

B-67 Bronson, Bob

B-68 Brook Street Commons, Inc.

B-69 Brook Valley Condominiums

B-70 Brookdale Arms Condominiums

B-71 Brooklyn Bakers

B-72 Brookshire Builders

B-73 Brown Derby Restaurant

B-74 Brown Lumber

B-75 Brown, Gary (d/b/a Gary Brown Roofing)

B-76 Buckmiller Brothers Funeral Home, Inc.

B-77 Buckmiller, Terry

B-78 Buddy's Sales & Service

B-79 Budris, Ed

B-80 Bunker Hill Market

B-81 Burlington Construction Company

B-82 Burmingham Construction

B-83 Burndy Corporation

B-84 Butterfield, T.F.

B-85 Birchwood Kennels

B-86 B & C Auto Clinic

C-1 C & S Building Co.

C-2 C.J.'s Restaurant

C-3 C.J.T. Construction (a/k/a C.J.T. & Sons Construction)

C-4 C.R. Gibson Company (a/k/a C.R. Gibson)

C-5 CFI Construction

C-6 CIPCO Manufacturing Company (a/k/a Cipco Mfg., Inc.)

C-7 Calabrese Construction (a/k/a Joe Calabrese Construction Company)

C-8 Call Peter, Inc.

C-9 Capital Construction Company

C-10 Cappezziello, Mrs. C.

C-11 Capri Restaurant

C-12 Carby Corporation

C-13 Carew Eyelet

C-14 Peterson, Carl G. (a/k/a Carl G. Peterson, Inc.)

C-15 Carlson Furniture

C-16 Carolina Freightways

C-17 Carolyn's Ice Cream

C-18 The Carpet Barn, Inc.

C-19 Carreria Electric Co.

C-20 Carreria, Beth

C-21 Carriage Homes

C-22 Carroll, Donald

C-23 Caruso Remodeling

C-24 Carvel Ice Cream

C-25 Casa Nova Restaurant

C-26 Catalina's Auto Sales

C-27 Cavanaugh Travel Agency

C-28 Celantano Properties

C-29 Central Builders

C-30 Central Manufacturing Company, Inc.

C-31 Central Warehouse

C-32 Century Tire Co. (a/k/a Charles Fisher)

C-33 Charles Batchelder Co., Inc.

C-34 Charles Jewett Corporation

C-35 Charter Oak Trucking

C-36 Chase Parkway Garage

C-37 Chemical Leamon Tank Lines, Inc.

C–38 Mrs. Yen Chen
C–39 Cherry Street Associates
C–41 Chic & Rob Restaurant
C–42 Chicoski Market
C–43 Cipriano, Joseph X.
C–44 City Trust
C–45 Clancey's Remodeling
C–46 W.F. Clark Fuel & Trucking (a/k/a W.G. Clark Trucking)
C–47 Clark, Charles F.
C–48 Custom Cables Corporation
C–49 Clark, Wilson T.
C–50 Daigle, Clay
C–51 Clear View Condominiums
C–52 Clearwater Pools, Inc.
C–53 Clementine's
C–54 Cumberland Farms
C–55 Coastal Energy, Inc.
C–56 Coastal Remodelers
C–57 Cobbler's Bench
C–58 Coffee Shop
C–59 Coiello Plumbing
C–60 Cole Screw Machine Products, Inc.
C–61 Colonial Auto Parts, Inc.
C–62 Colonial Autobody
C–63 Bank of Boston, Connecticut (f/k/a Colonial Bank & Trust Company)
C–64 Colonial Sheet Metal
C–65 Colonial Teaco
C–66 Colonial Tool & Die Company, Inc.
C–67 Colonial Village
C–68 Columb, Douglas
C–69 Columbo, Christopher
C–70 Community Refuse Service
C–71 Concentric Tool & Mfg. Company, Inc.
C–72 Condiesel Mobil Equipment (a/k/a Farley Inds)
C–73 Congregational Church of Naugatuck
C–74 Congress Tool Co.
C–75 Connecticut Art Craft Corp.
C–76 Connecticut Bank & Trust
C–77 Connecticut Factors
C–78 Connecticut Institute of Hair Design
C–80 Connecticut Metal Building
C–81 Connecticut Paper Construction Corp.
C–82 Connecticut Rail Corp.
C–83 Connecticut Remodelers
C–84 Connecticut Reserve Supple
C–85 Connecticut Resource Recovery Authority
C–86 Connecticut Sign Craft
C–87 Connecticut State Police
C–88 Connecticut Test Boring
C–89 Currier Electric
C–90 Connecticut Water Company
C–92 Consolidated Rail Corporation
C–93 Construction Services
C–94 Consumer Value Stores (Division of Melville Corp.)
C–95 Continental Catering
C–96 Continental Leisure Production
C–97 Convenient Industries of America
C–98 Cookson, John
C–99 Cumming, Robert
C–100 Copes Rubbish Removal
C–101 Corcoran Transportation
C–102 Corey's Market
C–103 Corner Cupboard
C–104 Costanzo Real Estate
C–105 Cotton Hollow Condominium
C–106 Country Club Apartments
C–107 Country Club Condominium Health Care (a/k/a Country Club Condominium Assoc.)
C–108 Countrywide Construction
C–109 County Vending Service
C–110 Coviello, Mrs.
C–111 Cracker Barrel
C–112 Creative Floors
C–113 Crelan Construction
C–114 Crelan, Arthur
C–115 Croft Associates
C–116 Cromie, Bill
C–117 Cronin, John
C–118 Cross Country Records
C–119 Cryo Dyne Corp.
C–120 Connecticut, State of
D–1 D & G Industries
D–2 D & S Autobody
D–3 D.J. Getty's
D–4 D. Thurston & Sons (a/k/a D. Thurston & Sons, Inc.)

D–5  D.A.S. Construction

D–6  D.L. Bands, Inc. (also spelled D.L. Banks, Inc.)

D–7  DMC Construction

D–8  Daddio's (a/k/a Daddio's Auto Parts)

D–9  Dairy Mart, Inc.

D–10  Dansk International

D–11  Dansky's Roofing & Sheet Metal Works

D–12  Daverso, Joe

D–13  Davis Refuse Co.

D–14  Dawn Enterprises

D–15  Dean's Restaurant

D–16  Dee's

D–17  Dee's Refuse

D–18  Del Glass Co.

D–19  Depalma, Fred

D–20  Derby Cellular

D–21  Derby Properties Company (f/k/a Derby Sponge Products, Inc.)

D–22  Derby Tire

D–23  Desrosiers, Roland

D–24  Dezimo, Mike (also spelled Dezinno)

D–25  DiGiorgio Roofing

D–26  Diamond Roofing Company, Inc.

D–27  Difronzo, Don (also spelled Difronzio)

D–28  Dinova's Four Corner Store

D–29  Discount Furniture

D–30  Diver/Powell

D–31  Doctor's Association, Inc.

D–32  Donham Crafts, Inc.

D–33  Donovan's Pharmacy

D–34  Doolan, Rite

D–35  Dot Fastener Company

D–36  Douglas Construction

D–37  Douval Tool & Manufacturing, Inc.

D–38  Doyle, Henry

D–39  Drug City

D–40  Drywall Unlimited

D–41  Dublin St. Apothecary

D–42  Duffy's Cafe

D–43  Dufour Brothers

D–44  Dunaway Company

D–45  Dunkin Donuts

D–46  Durette, Joe

E–1  E & F Construction

E–2  Elshire, Frank (d/b/a E–Z Laundromat & Dry Cleaning)

E–3  E–Z Rental

E–4  EJC Transportation

E–5  Eagle Moisture Protection

E–6  Eagle Truck Repair

E–7  East Coast Metal Hose

E–8  East Side Deli

E–9  Eastern Builders

E–11  Eckles

E–12  Economy Shoe Store

E–13  Edgecomb–Milford, Inc.

E–14 [1]  Edward Smith Contractor

E–14 [1]  Edward J. Smith Company

E–16  Elk's Lodge # 967

E–17  Ellin, Anita

E–18  Empire Construction

E–20  Engle, Henry

E–22  Erich's Auto Works

E–23  Erickson, Brad

E–24  Ernie's Market

E–25  Evanoski, Frank

F–1  F & F Construction Co.

F–2  F & S Oil Co.

F–3  F. Perrotti & Sons

F–4  F.B. Mattson Co.

F–5  FBC Edmund Tuska

F–6  FIP Corporation

F–7  First National Stores–Naugatuck

F–8  Fabor Fourslide (see also Fabor Fourslide, Inc.)

F–9  Fairmont Corporation of Connecticut

F–10  Fairway Inn

F–11  Family Shoe Center

F–12  Farer Transportation

F–13  Fassett's Farm

F–14  Federal Paper Board

F–15  Fern St. Apartments

F–16  Ferriera, Jose

F–17  Festa, Edward

F–18  Fill 'N' Shop

F–19  Finast Supermarket (a/k/a Finast Vendor)

1. Exhibit D, Part 1 of 3, to Objections and Response of Laurel Park Coalition to December 17, 1991 Order has no designation E–15, but two E–14 designations

F-20 Finast
F-21 Finateri, Tony
F-22 Fine Craft Jewelers
F-23 Fine Line Brazing
F-24 Finke, Joe
F-25 Finkle, Daniel
F-26 Fiore Restaurant
F-27 First Assembly Church
F-28 First National Stores—Naugatuck
F-29 Fitzpatrick, Edward
F-30 Flea Market, Inc.
F-31 Foam Plastics
F-32 Fonseca, Edward
F-33 Foodbag, Inc.
F-34 Ford's Drug Store
F-35 Forrester, William
F-36 Fortin's Restaurant
F-37[2] Francisco, Jose
F-38 Frank Buick, Inc.
F-39 Frank Mercedes & Sons
F-40 Frank's Market
F-41 Frankie's Family Restaurant
F-42 Freddy's Diner
F-43 Freedman P. Thurston, Inc. (a/k/a Freeman P. Thurston, Inc.)
F-44 Freihoffer Bakers, Inc.
F-45 Freihoffer Retail Store
F-46 Frester, William
F-47 Friendly Inc Cream
F-48 Frontier Cafe
G-1 G & L Excavating, Inc.
G-2 G & R Manufcturing, Inc.
G-3 G.C. Murphy
G-4 GTE Products Corp. (a/k/a CTE Sylvania)
G-5 Gabe's Service
G-6 Galiette, John
G-7 Garafola & Sons, Inc.
G-8 Garceau, Gerald
G-9 Garfield's Restaurant
G-10 Garry's Chill & Ribs
G-11 Gem Manufacturing Company, Inc.
G-12 Gene's Restaurant
G-13 General Roofing
G-14 General Roofing & Sheet Metal Co., Inc.
G-15 Gentile, Frank
G-16 George Knapp Co.
G-18 Get & Go Food Stop
G-19 Gift Box
G-20 Gigi Restaurant
G-22 Giuffre, Steven
G-23 Gray, Jon (d/b/a Gleem Paint Co.)
G-24 Glen Hollow Condominiums
G-25 Glen Hollow Developers
G-26 Glenbrook Apartments
G-27 Glendale Health Center
G-28 Golf Club and Garage
G-29 Goncalves, Fernando
G-30 Gondola, Robert
G-31 Gordon's Plumbing
G-32 Grant City
G-33 Grant Company, W.T.
G-34 Grass Hopper Lawn
G-35 Grass, Anita
G-36 Gunnoud Construction Company
G-37 Great Brook Industrial Park
G-38 Great County Bank
G-39 Green, Frank
G-40 Grey Fox Construction
G-41 Grich Industries
G-42 Grid Building
G-43 Griffith Custom Builders
G-44 Griffiths, Al
G-45 Guerrera, R.J.
G-46 Guggenheim Corporation (a/k/a Guggenheim International)
H-1 Hamden Tool & Die
H-3 A.C. Hampson Printing
H-4 Hanacek, Robert
H-5 Handy Stop Food Shop
H-6 Harbor Foods, Inc.
H-7 Harbor Petroleum Products, Ltd.
H-8 Hardy, Kenneth
H-9 Harlem Valley Landfill Corp.
H-10 Harvey's Service Station
H-12 Hayner Hoyt, Inc.
H-13 Heart of the City
H-14 Heidi Shea Natural Gas, The
H-16 Hendrick Chevrolet
H-17 Hennessey, Neil (also spelled Neal Hennessey)
H-18 Henss, Joyce
H-19 Heritage Development Group, Inc.
H-20 Heritage Village
H-21 Hermann, Gerlinde
H-22 High Ridge Apartments

2. Exhibit D, Part 2 of 3, to Objections Response of Laurel Park Coalition to December 17, 1991 Order has this entry designated as "B-37"

H–23  Highland Homes
H–24  Hill Tool & Mfg.
H–25  Frank Hill (d/b/a Hill Tool & Mfg.)
H–26  Hobby Shop
H–27  Holland/Caruso
H–28  Holleys Package Store
H–29  Hollywood Doll House
H–30  Home Market
H–31  Home Package Store
H–32  Homer Bronson Co.
H–33  Hong Kong Restaurant
H–34  Hopbrook East Condominiums Assoc. (or Hopbrook Est. Condominiums Assoc.)
H–35  Hopson, Ltd.
H–36  Horizon Homes
H–37  Hospital Marketing Services, Inc.
H–38  Howard Engineering Co.
H–39  Howard Johnson Motel
H–40  Humphrey, Sylvia
H–41  Humphries, Ray
H–42  Hung Fat Chinese Restaurant
H–43 [3]  Hurlburt, Ken
H–43 [3]  Haegstrom, Michael (also spelled Michael Hagstrom)
I–1  Ideal Manufacturing (Cooper Industries)
I–2  Independent Auto
I–3  India Emporium
I–4  Indian Rock Realty Co.
I–5  Industrial Development Group
I–6  Industrial Riggers
I–7  Infranor, Inc.
I–8  Innes Bros. Inc.
I–9  Interstate Industrial Supply
I–10  Irene's Variety Store
I–11  Iassogna, Dr. Nicholas
J–1  J & A Motors
J–2  J & J Auto
J–3  J & K Electric Company
J–4  J & K Package
J–5  J & L Grocery
J–6  J & L Manufacturing
J–7  J. Andre Fournier Real Estate
J–8  J.L. White Co.
J–9  J.F. Barret & Sons, Inc.
J–10  J.J. Pennell Food & Beverage
J–11  Jabs, Alfred and Son
J–12  Jacob Brothers, Inc.
J–13  James Pelletire Building Inc.
J–14  Jaminsky, Samuel
J–15  Jane's Grocery Store
J–16  Jayfee Food Store
J–17  Jeeps of Old
J–18  Jemco
J–19  Jetzon Tire Company (Int'l. Tire Warehouse, Inc.)
J–20  Jiffy Laundry II
J–21  Jiffy's Laundry
J–22  Jim Jensen Studio
J–23  Jim's E–Z Shop
J–24  Joe's Antiques
J–25  John Parsons Associates
J–26  John's Pizza
J–27  John's Refuse Service (John Cleary)
J–28  Johnny's Turnpike Texaco
J–29  Jones Nursing Home
J–30  Joseph Taglia Construction
K–1  Kane Auto Parts
K–2  Kaplan Brothers, Inc.
K–3  Karbowicz, Matty
K–4  Kazalunus, Thomas
K–5  Kelly's Cafe
K–6  Kelly's Motorcycle Parts
K–7  Kenny's Diner
K–8  Kenny, Larry
K–9  Kielb, Leon M. (d/b/a Leon Kielb Builder)
K–10 [4]  Killingworth, Town of
K–12 [4]  King's Department Store
K–12 [4]  Kingsley, Donald
K–13  Kitchen Specialties
K–14  Kloss, Walter
K–15  Knapp Box Co.
K–16  Knapp Construction
K–17  Knapp, Richard
K–18  Kneen, E.H.
K–19  Kneen–Jacobs
K–20  Knights of Columbus
K–21  Koch, Robert L.
K–22  Kombi Ltd.

**3.** Exhibit D, Part 2 of 3, to Objections and Response of Laurel Park Coalition to December 17, 1991 Order has two H–43 designations

**4.** Exhibit D, Part 2 of 3, to Objections and Response of Laurel Park Coalition to December 17, 1991 Order has no designation K–11, but two K–12 designations

K–23  Korvette Services
K–24  Kramer's Furs
K–25  R. Adel Kresgres
K–26  Krodel Foundry, Inc.
K–27  Kuraitis, Mrs. Adam
L–1  L'arrives Groceries
L–2  L.F. Pace & Sons
L–3  L.R. Yelding Associates
L–4  LaFreniere & Evans Builders, Inc.
L–5  Labovits, Elliott, Atty.
L–6  Labriola, G., M.D.
L–7  Lakewood Handyman
L–8  Lamas, Tony
L–9  Lamco Screw Machine Products
L–10  Lamothe Construction Co.
L–11  Lamy, Don
L–12  Lane Financial
L–13  Langley Products
L–14  Lankel Realty Co.
L–15  Lantern Park Condominiums
L–16  Lantieri Roofing
L–17  Larkin, Jack
L–18  Larson, Anthony
L–19  Latella Carting Co.
L–20  Laurel Ledge School
L–21  Laurel Maintenance
L–22  Law Offices
L–23  LeChallet–Millat
L–24  Lea Manufacturing Company, The
L–25  Leader Oil Company, Inc., The
L–26  Leavenworth Realty
L–27  Ledgeside Condominium
L–28  Ledgewood, Inc.
L–29  Lee's Beverage Store
L–30  Lee, John
L–31  Lennon, R.M.
L–32  Leville, Mrs. Joan
L–33  Libera, Bonnie
L–34  Lima, Jeff
L–35  Linc Corp.
L–36  Lincoln Paving
L–37  Liskiewicz, Ed.
L–38  Litchfield Farm Shops
L–39  Litchfield Home Improvement
L–40  Litchfield Ponds, Inc.
L–42  Lombard Brothers, Inc.
L–43  Lombard Realty
L–44  Long Hill Lumber & Cabinet Works
L–45  Long Meadow Cafe

L–46  Lopes City Hall
L–47  Lorusso Construction
L–48  Lou Costa Restaurant
L–49  Louis T. Grohs Plumbing
L–50  Lunch, Anne
L–51  Luponoc, Gary
L–52  L & C Europa Construction
M–1  M & M Transportation
M–2  M. Jacob's & Sons, Inc.
M–3  M.J. Daly & Sons
M–4  M.J.R. Inc.
M–5  M.L. Callangelo
M–6  Music Plus Records
M–7  M.R.T. Realty
M–8  MIR, Inc.
M–9  MKB Industries
M–10  MS & P Construction Co.
M–11  Macary, Francis
M–12  Mack Truck Sales
M–13  Magic Maintenance
M–14  Magnum Development Corp.
M–15  Mahan's Catering
M–16  Mahler Realty
M–17  Maho Machine Tool Corp.
M–18  Major Custom Tire
M–20  Mancione, John
M–21  Manheimer Assoc
M–22  Manna, Ricco
M–23  Maple Tree Nursery
M–24  Mar–Scice Investments
M–25  Maria David's Place
M–26  Mariano Bros.
M–28  Markey, Frank
M–29  Markovic, Bob
M–30  Martin's Aluminum
M–31  Marty's Corner
M–32  Masler, Joe
M–33  Massimo Coal & Oil
M–34  Massimo Trucking
M–35  Mastidone, John
M–36  The Mattatuck Historical Society
M–37  Mattatuck Manor Apartments
M–38  Matty's Paving
M–39  Maxies
M–40  McCarthy, Jack

M-41 McCarty, John C.
M-42 McDonald's Restaurant
M-43 McDonald, Margie
M-44 McLean, Inc.
M-45 Meadow St. Sunoco
M-46 Meadowland Estates
M-47 Mechanical Main Frame Co.
M-48 Medical Center
M-49 Megin, W.J.
M-50 Meineke Muffler Shop
M-51 Murphy, Charlie
M-52 Mengacci Funeral Home
M-53 Metals Conversion, Inc.
M-54 Meyer & Schwartz
M-55 Meyers, Donald
M-56 Mezzio's Service Station
M-57 Michael Schiavone & Sons, Inc. (a/k/a Schiavone Corp.)
M-58 Michael's Carpets, Inc.
M-59 Michener, Al
M-60 Middlebury Convelescent Hospital
M-61 Middlebury Store
M-63 Middlewood, Inc.
M-64 Midway Distributing
M-65 Mike's Pizza Palace
M-66 Miller, Francis
M-67 Minicucci, John
M-68 Miracle Products, Inc.
M-69 Mis, Walter
M-70 Modern Air Decor
M-71 Moran Landscaping
M-72 Michael, Morris
M-73 Mountainview Wines
M-74 Mountainview Family Store
M-75 Mountainview Laundramat
M-76 Mountainview Pizza
M-77 Mountainview Theater
M-78 Mozesky, R.
M-79 Mr. Doughboy Lunch
M-80 Mr. Franks
M-81 Mr. Raymond Hair Design
M-82 Murphy Transportation
N-1 N.H. Copper Co.
N-2 NEMCO
N-3 Nardelli's
N-4 Nardello, Joseph
N-5 Nasco, Inc.
N-6 National Custom Builders
N-7 New Haven Copper Company
N-9 Nature's Touch Flower Shop
N-10 Naugatuck Ambulance Service
N-11 Naugatuck Associates
N-12 Naugatuck Auto Parts
N-13 Naugatuck Board of Education
N-14 Naugatuck Cleaning
N-15 Naugatuck Cleaning Service
N-16 Naugatuck Commons
N-17 Naugatuck Daily News
N-18 Naugatuck Dairy
N-19 Naugatuck Donuts, Inc.
N-20 Naugatuck Farmer's Market (a/k/a Naugatuck Farm Market)
N-21 Naugatuck Garage Inc.
N-22 Nycrest Corp.
N-23 Naugatuck Hardward (Elmer Schmidtz)
N-24 Naugatuck Home Market
N-25 Naugatuck Library
N-26 Naugatuck Plumbing & Heating Supply
N-27 Naugatuck Roofing Co.
N-28 Naugatuck Savings Bank
N-29 Naugatuck Seafood
N-30 Naugatuck Stair Builders
N-31 Nutmeg Bakers Supply
N-32 Naugatuck Valley Glass
N-33 Naugatuck Valley Radio
N-34 Naugatuck Valley Refuse
N-35 Naugatuck Valley Savings & Loan
N-36 Naugatuck Video & Variety
N-37 Naugatuck Window & Glass
N-38 Naugatuck YMCA
N-39 Naugy Nook
N-40 Naugy Pizza
N-41 Neal's Coffee Shop
N-42 Neiltran, Inc.
N-43 Nelson Freightways, Inc.
N-44 Nelson's Pharmacy
N-45 New England Bakery
N-46 New England Constructor, Inc.

N-47  New England Div. Corp of Engineers

N-48  New England Masonry

N-49  New England Metal

N-50  New England Vermiculite

N-51  New Haven Housing Authority

N-53  New Penn Motor Freight

N-54  New Roofing Systems

N-55  Newton Buying Corp.

N-56  Nichol's Service Sta.

N-57  Nicole, Lewis

N-58  Night Shift

N-59  Nite Life Lounge

N-60  No-Ark, Inc.

N-61  Noble, Walter

N-62  Northeast N.D.E. Co.

N-63  Northeast Utilities (Connecticut Light & Power)

N-64  Northern Petroleum

O-1  O & G Industries

O-2  O & H, Inc.

O-3  O & O Auto Radiator

O-4  O'neil, Andy

O-5  O'Toole's Pharmacy

O-6  O.B. Construction

O-7  O. Hinds

O-8  Oak Terrace

O-9  Oakwood Landscape

O-10  Oxford General Industries

O-11  Odd Lot Stores

O-12  Old Corner Cafe

O-13  Olivia, William

O-14  Olympia Bedding

O-15  One Price Shop

O-17  Oratt, John

O-18  Orchard Hill Condominiums

O-19  Orlando Henriques

O-20  Ormsbee, Everett

O-21  Oronoke Construction

O-22  Orourke & Birch Inc.

O-23  Oster, A.J. Co.

O-24  Otter Rock Enter.

O-25  Oulellette Brothers (also spelled Ouellette Brothers)

O-26  Oullette Brothers, Drywall Company (also spelled Ouellette Brothers, Drywall Co.)

O-27  Our Lady of Fatima Church

O-28  Overbaugh Tool

O-29  Owens, Frank

O-30  Owens, Tom

O-31  Owens-Corning Fiberglass

P-1  P. Francini Company

P-2  Paesano's Pasta House

P-3  Pailler, Dean

P-4  Pancoast, George

P-5  Paoli's Inc.

P-6  Paolino's Restaurant

P-7  Papparazzo Management Co.

P-8  Park City Builders

P-9  Park City, Inc.

P-10  Parkview Apartments

P-11  Parkview Correspondents

P-12  Parsons Screw Products

P-13  Part's Place

P-14  Patterson Tire/Oil Company

P-15  Payne, Dick

P-16  Pendleton, Harry

P-17  Pepe, Ron

P-18  Pepe, Ronald

P-19  Pepperidge Tree Card Shops, Inc.

P-20  Perfection Rubber

P-21  Performance Company, Inc.

P-22  Perkin-Elmer Co.

P-23  Puritan Marine Flotation

P-24  Peterson, Richard

P-25  Petrol Plus

P-26  Petroleum Contractors

P-27  Pharmacal Research

P-28  Phil's Restaurant

P-29  Physical Therapy & Sports

P-30  Pimiano, Tony

P-31  Pinebrook Assembly of God

P-32  Pioneer Automobile

P-33  Pioneer Plaza

P-34  Pizza Place

P-35  Player's Pub

P-36  Plaza Pizza and Games

P-37  Plea's Molding (also spelled Plas-Mold)

P-38 Plume & Atwood Industries, Inc. (Diversified Industries)
P-40 Polish American Club
P-41 Port Cafe
P-42 Portanova Trucking Co.
P-43 Porter & Chester Institute
P-44 Portuguese Club (a/k/a The Club Uniao Portuguesa)
P-45 Poust's Service Station
P-46 Powell, Raymond
P-47 Power Test
P-48 Powers, Timmy
P-49 Pre–Designed Structures
P-50 Precise Fiberglass
P-51 Purcaro TV and Audio
P-52 Premier Rooting Co. (also spelled Premier Roofing Co.)
P-53 Prime Screw Machine Products
P-54 Procopion, Gus
P-55 Professional Park
P-56 Prospect Manor Apartments
P-57 Prospect Sewer & Drain
P-58 Public Paint Supply
Q-1 Quality Deli and Grocery Mart
Q-2 Quality Rubber Company
Q-3 Quality Rubber Products
Q-4 Quality Sheet Metal
R-1 R & A Construction
R-2 R & E Painting, Inc.
R-3 R & R Tire
R-4 R & S Construction
R-5 R & S Oil Company
R-6 R.B.T. Real Estate
R-7 R.J. Restaurant
R-8 R.S.J. Development
R-9 R.A. Del Dresqees
R-10 R.D.S. Construction
R-11 R.J. Black & Sons
R-12 R.N. Russell Welding
R-13 R.T. Delaney Company, Inc.
R-14 Racke, L.H.
R-15 Radio Shack (Naugatuck & Watertown)
R-16 Radke, Bub
R-17 Rafferty & Brown
R-18 Rainbow Aluminum Products
R-19 Ralph Corbo Associates
R-20 Ram Welding Company, Inc. (a/k/a Ram Welding Co.)
R-21 Ramblewood Associates
R-22 Ramco Technologies, Inc.
R-23 Ramos Steel Corp.
R-24 Raphael's, Inc.
R-25 Rasinski, Conrad
R-26 Ravenscroft, George, Jr.
R-27 Ravenwood Associates
R-28 Ravenwood Home Improvement
R-29 Ray Shea Real Estate
R-30 Ray's Dairy Bar
R-31 Ray's Grocery Store
R-32 Ray's Hardward
R-33 Reagan's Valley Roofing
R-34 Reed & Greenwood Insulation
R-35 Reed, Stephen
R-36 Reid's Coffee Shop
R-37 Reliable Roofing
R-38 Rent-a-Painter
R-39 Repko, Steve
R-40 Ruella's Wine Shop
R-41 Reynold's Restaurant
R-42 Reynolds Aluminum Building Products
R-43 Rhea Carpet
R-44 Rhoades, Mrs. Richard
R-45 Ricciardi, Nick
R-46 Richard's Carpet
R-47 Richlin Purchasing
R-48 Ridge Theaters, Inc.
R-49 Riley, Thomas V.
R-50 Rimkus Used Cars
R-51 Rinaldi's Restaurant
R-52 Rupwani Associates
R-53 Rita's Bakery of Naugatuck
R-54 Rite Aid Corporation
R-55 Rite Way, Inc.
R-56 Roadway Express
R-57 Robert's Construction Company
R-58 Roberts, David
R-59 Robertshaw Controls
R-60 Robinson's Lunch
R-61 Rock and Rodeo

R–62   Rockwell, Bob
R–63   Rodney's Diner
R–64   Rodrigues, Adelino
R–65   Rodrigues, Jack
R–66   Rogauskas, Ed
R–67   Rogers, Dr.
R–68   Rondo of America, Inc.
R–69   Roofing Systems Narotsky
R–70   Roosties
R–71   Root & Boyd, Inc.
R–72   Rosenblatt's Department Store
R–73   Rossi Shoe Store
R–74   Rostowski, Ray
R–75   Rostowsky, Edward
R–76   Rourke, Chris
R–77   Rt. 63 Professional Center
R–78   Rubin's
R–70[5]   Rudy's Restaurant
S–1   S & J Renovating Contractors
S–2   S & S Construction Co.
S–3   S.D. Precision
S–4   SCR Electric, Inc.
S–5   Saf–L–Auto Center of Naugatuck
S–6   Safety Scope, Inc.
S–7   Sage Broadcasting of Naugatuck
S–8   Sagres Restaurant
S–9   Sal's Auto
S–10   Salem Lutheran Church
S–11   Samolis, Tom
S–12   Sanitary Refuse
S–13   Sanitas, Inc.
S–14   Santos & Santos
S–15   Sarracco Heating and Air Cond.
S–16   Savelle Ford, Inc.
S–17   Savings Bank of Ansonia
S–18   Schiavi Construction, Inc.
S–19   Schick Companies, Inc.
S–20   Schnip Construction
S–21   Schoeck, Warren
S–22   Scott, Dave
S–23   Scott, Fred
S–24   Scotty's Lounge
S–25   Scovill, Inc.

S–26   Scovill Manufacturing Corp., The
S–27   Scully, Mrs. Matthew
S–28   Seafood Gardens
S–29   Sealand Environmental Services
S–30   Sealectro Corporation
S–31   Sealtite Contracting Corp.
S–32   Sealy Mattress Co.
S–33   Sylvan St. Baptist
S–34   Segre Development Co.
S–35   Semco
S–36   Serafirm Santos
S–37   Serge Iron
S–38   Settani Assoc.
S–39   Seven Bros. Restaurant
S–40   Seven Eleven Stores
S–41   Seymour Brass Turning Company
S–42   Seymour Oil Co.
S–43   Seymour Packet
S–44   Seymour Transfer
S–46   Shaun's Auto Electric
S–47   Shean Associates, Inc.
S–48   Shean's Amusement Inc.
S–49   Sheehy, Linda
S–50   Shelton Roofing
S–52   Sherwood Medical
S–53   Shore's Auto Parts
S–54   Sibbald Mason & Contracting Co., Inc.
S–55   Sikon Corporation
S–56   Sikorski, Ray (Shore Line Tires)
S–57   Skinner, S.P.
S–58   Skyline Restoration Contractors
S–59   Slavin, John
S–60   Sodlowkys Wine & Spirit Shop
S–61   Soper, David W.
S–62   Sorrocco Heating & Air Cond.
S–63   South School
S–64   Southern New England Telephone (a/k/a SNET)
S–65   Southern New England Theatres
S–66   Southwood Apartments
S–67   Spaner, Donna
S–68   Speedmaster Packaging Corp. (a/k/a Speedmaster Corp.)

5. Exhibit D, Part 3 of 3 to Objections and Response of Laurel Park Coalition to December 17, 1991 Order has this entry designated R–70 instead of "R–79"

S–69  Speedy Muffler King
S–70  Sperry Automatics Company Inc.
S–71  Sutherland Insurance
S–72  Spiro–Seferi
S–73  Squegley, George
S–74  St. Francis Church
S–75  St. Hedwig's Rectory
S–76  St. Michaels Church
S–77  St. Vincent De Paul Society
S–78  St. Vincent Ferrer Church
S–79  Stadnick, David
S–80  Stamford Refuse (Ind.Disp.Svc.)
S–81  Super Retread Tire Company, The
S–82  Stan's Garage
S–83  Stanley, Dee
S–84  State National Bank
S–85  State Products Co.
S–86  State Roofing Company
S–87  Sure Lites
S–88  Stauffer Chemical Company
S–89  Sterling Paper Corporation
S–90  Steve's Automotive
S–91  Steve's Tires
S–92  Stewart, Robert
S–93  Stokes Paint Store
S–94  Stop & Shop
S–95  Stronck, Marion
S–96  Studios Unlimited
S–97  Suburban Carting
S–98  Suburban Sanitation (Robert Johnson)
S–99  Subway Shops (Bill Montalto)
S–100  Sugar Loaf Bakery
S–101  Sullivan's Restaurant
S–102  Summit Chemical Company
S–103  Sunshine Nursery School
S–104  Super Print
T–1  T & F Seafood
T–2  T & J Molding, Inc.
T–3  T.J. Maxx
T–4  Tarnowski Market
T–5  Team Construction
T–6  Technico–Op, Inc.
T–7  Telesch, Dewey

T–8  Terrance Hall, Inc.
T–9  The Kitchen
T–10  The Meat Store
T–11  The Store
T–12  Tyler, Dr. William
T–14  Thompson Steel Co.
T–15  Thrifty Market
T–16  Tift, J.H.
T–17  Tiger Paw
T–18  Tighten UP
T–19  Time–Mist, Inc.
T–20  Tire Shak, Inc.
T–21  Toad Hall Assoc.
T–22  Tobacco Valley Sanitation
T–23  Tocco's Restaurant
T–24  Togabee's II
T–25  Tool Craft Eng.
T–26  Torreira Restaurant
T–27  Total Music Store
T–28  Town Fair Tire Centers, Inc.
T–29  Traffic Engineering Association
T–30  Trans Act International
T–31  Trash Management
T–33  Tuttles Auto
T–35  Triangle Printing
T–36  Triangle Services
T–37  Triano, Matt
T–38  Triple S Tool Co.
T–39  Troiano, Mr.
T–40  Trosk, Lee
T–41  Trowbridge Apartments
T–42  True, Annette
T–43  D. Thuston & Sons
U–1  U.F.W.
U–2  U.S. Prolam, Inc.
U–3  U.T.F. Carriers
U–4  Union City Pizza
U–5  United Avionics
U–6  United Developers
U–7  United Fund Investors
U–8  United Painting Company, Inc.
U–9  United States Postal Service
U–10  Universal Builders
U–11  Urbano Construction
U–12  United Parcel Service

V-1   V & V Tool Co.

V-2   V.S.H. Realty, Inc.

V-3   Valente, Jose

V-4   Vallerie Transportation Services

V-5   Valley Drive In

V-6   Valley Mobile Homes Park

V-7   Valley Motor Trailer Sales

V-8   Valley Office Supply

V-9   Valley Power Equipment

V-10  Valley Tire

V-11  Varnauskas, Robert

V-12  Vermont-American Corp.

V-13  Victoria Inn Cafe

V-14  Vieira Agency

W-1   W.D. Crosby Plumbing

W-2   Worth's Bargain Basement

W-3   Wagner Electric

W-4   W.R. Archer and Co. (a/k/a Archer Refuse)

W-5   Wagner, Ralph

W-6   Walt's Liquor Store

W-7   Waltec American Forgings

W-8   Ward's Scrap

W-9   Ward, Robert J.

W-10  Warner Landscape (Richard F. Warnick)

W-11  Waterbury Angels

W-12  Waterbury Auto Works

W-13  Waterbury Companies, The

W-14  Waterbury Contract Eyelet & Stays (also spelled Waterbury Contact Eyelet & Stays)

W-15  Waterbury Cycle Center

W-16  Waterbury Exxon

W-17  Waterbury Furniture Company

W-18  Waterbury Garmet

W-19  Waterbury Hospital

W-20  Waterbury Medical Center

W-21  Waterbury Neckware

W-22  Waterbury Pressed Metals

W-23  Waterbury Professional

W-24  Waterbury Rolling Mills

W-25  Waterbury Sand & Gravel

W-26 [6]  Waterbury Truck Service

W-28 [6]  Watertown Autobody

W-28 [6]  Watertown Building Supply

W-29  Watertown Construction Co.

W-30  Watertown Housing Authority

W-31  Watertown Laundramat

W-32  Watertown Transportation

W-34  Dave Waterworth Sign Company

W-35  Watkins Bros.

W-36  Wayside Farm Market

W-38  Wendys

W-39  West Hill Apartments

W-40  West Hill Condominiums

W-41  Western Woodwork

W-42  Weston Hills Golf Course

W-43  Westover School, Inc.

W-45  Wheeler, Harold

W-46  Whelan's Drug Store (Brooks Drugs)

W-47  Whip-It Tire Company

W-48  White Oak Development

W-49  White Welding Co.

W-50  White, Dennis

W-51  Whitney Electric

W-52  Wholesale Kitchens

W-53  Widder Corporation

W-54  Widow Brown Restaurant

W-55  Wigglesworth, Inc.

W-56  Wilcox & Wilcox

W-57  Wilcox Drug Store

W-58  William's Brothers Builders

W-59  Williamson, J.L.

W-60  Wilson, David

W-61  Wiltshire Industries

W-62  Wittig, Irene

W-63  Wityak, Thomas

W-64  Wolcott Carpet of Excellence

W-65  Wolcott Lions Club

W-66  Woodbury Hill Condominiums

W-67  Woodbury Hill Inc.

---

**6.** Exhibit D, Part 3 of 3, to Objections and Response of Laurel Park Coalition to December 17, 1991 Order has no designation W-27, but two W-28 designations

W–69   Woodfield, Bob
W–70   Woodfield, James
W–71   Woodland, Charlie
W–72   Woodlawn Developers
W–73   Woodside Care Center