**B.F. GOODRICH CO., et al.**

v.

**Harold MURTHA, et al.**

v.

**RISDON CORP., et al.**

**Civ. No. N–87–52 (PCD).**

United States District Court,
D. Connecticut.

Dec. 20, 1993.

Barbara A. Finamore, William D. Brighton, Trial Atty., Land and Natural Resources Div., U.S. Dept. of Justice, Washington, DC, Philip R. Boxell, Gregory M. Keenan, Office of Regional Counsel, U.S. E.P.A., Region I, Boston, MA, Frank H. Santoro, Asst. U.S. Atty., New Haven, CT, for plaintiff U.S.

Louis R. Pepe, David E. Rosengren, Michael A. Zizka, Pepe & Hazard, Hartford, CT, John R. Cromer, Mishkin, Cromer, Eagelsfield & Maher, P.C., Indianapolis, IN, for plaintiffs B.F. Goodrich, et al.

William R. Murphy, Stanley E. Parese, Tyler, Cooper & Alcorn, New Haven, CT, Deming E. Sherman, Judith Coleback Savage, Edwards & Angell, Providence, RI, for plaintiff Uniroyal.

Kenneth Tedford, Asst. Atty. Gen., Hartford, CT, for plaintiff State of Conn.

Laura B. Frankel, Mark J. Zimmerman, Thomas J. Shortell, Elizabeth C. Barton, Updike, Kelly & Spellacy, P.C., Hartford, CT, for defendants and third-party plaintiffs Harold Murtha, et al.

### RULING ON DISPOSITIVE MOTIONS

DORSEY, District Judge.

This case arises out of the use of two sites, Beacon Heights (BH) and Laurel Park (LP), for waste deposits. BH and LP were owned, managed and/or used by the Murtha family and companies controlled by them. Sources' waste was not always deposited in the same site. Nearly 12 years ago, the Environmental Protection Agency (EPA) commenced an inquiry into the responsibility for Hazardous Substances (HS) at the two sites. As to BH, several potentially responsible parties (PRPs) formed a coalition (BHC) to clean up the site and settled with the EPA, Connecticut's Department of Environmental Protection (DEP) and the Murthas. A consent decree was lodged and entered as a judgment. The Murthas, who had sued a number of potential contributors (TPDs) based on the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA),

42 U.S.C. § 9601 *et seq.,* assigned their third party claims to BHC.

A coalition formed later, Laurel Park Coalition (LPC), undertook the same responsibility with respect to LP. By court order it was permitted to pursue contribution against a limited number of TPDs who were TPDs in claims by BHC. Now the TPDs by dispositive motions, all of which will be treated, as did the parties, as motions for Summary Judgment, seek to end the claims against them. BHC and LPC have joined to defend against the motions and have themselves moved for Summary Judgment. The record on which the motions will be decided includes:

a) The third party complaints and the answers thereto;

b) Uniform Discovery Order (UDO) compliances including Murtha transaction documents;

c) Supplemental discovery compliances including transcripts;

d) Affidavits supporting and in opposition to the motions including that of Dr. Brown;

e) The EPA Administrative Record and Decisions;

f) Findings of Fact previously entered herein.

The claims for contribution are controlled by 42 U.S.C. §§ 9613f and 9607 and require proof of the depositing of a HS, § 9601(14), at one or both sites. *B.F. Goodrich Co. v. Murtha,* 958 F.2d 1192, 1247–48 (2d Cir. 1992). BHC and LPC have identified subsections B and C of § 9601(14) as the basis of their claims.

EPA has been designated to identify hazardous substances creative of remedial liability, § 9602, which it has done in 40 C.F.R. § 261.1 on the basis that they are "capable of posing a substantial present or potential hazard to human health or the environment when improperly treated, stored, transported or disposed of." 40 C.F.R. § 261.11(a)(3). "Congress intended that EPA determine whether liability should attach to the disposal of a substance on a substance by substance basis," on the basis of what substances pose a "sufficient danger to the public to be included

on the hazardous substance list." *United States v. Serafini,* 750 F.Supp. 168, 171 (M.D.Pa.1990). BHC and LPC have grouped TPDs into groups which are claimed to have, in common, generated waste generically found to include HS, *i.e.,* Construction, Automotive repair and maintenance, Offices, Lawn and Garden, Restaurants and Drugs and Cosmetics.

Certain TPDs, listed in Appendix A, have, on file with the court and/or the document depository maintained by the Special Master, motions which have not been opposed and are not subject to cross motions of BHC or LPC. *See* Plaintiffs' Memorandum of March 12, 1993, pp. 4, 5, 7, 8, 9, 11 and 12; Plaintiffs' Memorandum of March 12, 1993, pp. 8, 10 and 13.

Many comments on the evidence in the Memorandum of Decision of January 12, 1993, are pertinent to the present motions and will not be repeated here.

DISCUSSION:

Summary Judgment is appropriate where the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Donahue v. Windsor Locks Bd. of Fire Commr's,* 834 F.2d 54, 57 (2d Cir.1987). If the moving party satisfies "the initial burden of demonstrating that no genuine issue of fact exists ... the non-moving party must set forth specific facts demonstrating that there is a genuine issue for trial." *B.F. Goodrich Co. v. Murtha,* 754 F.Supp. 960, 962 (D.Conn.1991), *aff'd,* 958 F.2d 1192 (2d Cir.1992) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986)). All inferences favorable to the non-movant and which may reasonably be drawn from the record, must be drawn in favor of the non-movant.

The motions and cross-motions as to each TPD will be discussed seriatim:

a) Adams Service Station

■ This TPD operated a motorcycle and snowmobile business and until 1981 sold gasoline. It allegedly disposed of, through Murtha, newspaper, paper towels soiled with

windshield cleaning fluid, plastic bags, used paper gaskets, spark plugs and light bulbs. Uncontradicted is movant's evidence that batteries, used oil and filters were otherwise disposed of. Based on the Brown affidavit, that disposal allegedly put lead, trichloroethane and trichloroethylene in BH. None of the products named are listed by EPA as HS. None of the actual products nor the components thereof are the subject of any direct evidence, and the Brown affidavit does not have probative merit in that respect. Questions about the credibility of Mr. Radauskas do not constitute affirmative evidence. For the reasons discussed in *B.F. Goodrich Co. v. Murtha*, 815 F.Supp. 539, 545–46 (D.Conn.1993) as well, there is no genuine issue of material fact as to this TPD's liability. Its motion is granted and the coalitions' motion is denied.

### b) Axil Corporation, d/b/a/ Homer D. Bronson Company

■ This TPD claims that it generated no waste found in BH or LP and that successor liability is inapplicable. Axil merged in 1986 with The Homer D. Bronson Company, a Delaware corporation (Bronson 2). Bronson 2 purchased limited assets of a Connecticut corporation of the same name (Bronson 1). Bronson 2 did not buy or receive any Bronson 1 stock, nor did it assume any of Bronson 1's liabilities. Bronson 1 thereupon changed its name to HDB Corporation which was dissolved in 1987. There was never any identity of officers, directors or shareholders between the two corporations. Bronson 2 did not conduct operations at nor did it purchase the site of Bronson 1's manufacturing. Bronson 2 sent no waste to either BH or LP. It used other landfills. Nothing in the record contradicts these assertions. Axil's motion for Summary Judgment is granted.

### c) Bristol Flowed Gasket Company, Inc.

■ Bristol claims it disposed of no HS at BH or LP, supporting its contention by the affidavit of Charles A. Rafferty, Jr. He asserts the waste removed by Murtha included no HS. Anything which might be the source of HS which the coalitions attribute to it was otherwise disposed of. It was not designated as a PRP by the EPA. BHC and LPC have shown no direct evidence that Bristol disposed of HS at either site. They cite the nature of its business, its generation of waste from which HS could be derived and removal of waste by Murtha. There is no evidence, direct or circumstantial, from which it could be found that Bristol disposed of HS at either site. Removal of waste by Murtha does not prove what was in the waste, and no evidence counters Bristol's evidence that any waste which might have contained HS was not disposed of through Murtha. The coalitions' claim that "cardboard, office waste basket contents, [cafeteria] garbage, junk mail and floor sweepings" contained "toluene, phenol, trichloroethane, and diethyl phthalate" is conclusory, unfounded and uncredited. Bristol's motion is granted and the coalitions' is denied.

### d) Coffee Shop, The

■ At most the record reflects movant's running a restaurant in two successive locations. In a stock form, BHC and LPC, based on the use of Clorox, detergent, Drano, soap, Lysol and Ajax, and based on Dr. Brown's affidavit, attribute to movant the disposal of xylenes and diethyl phthalate. Without direct contradiction, movant describes its waste as used paper products, food and drinks. It defies common sense to credit Dr. Brown because any one of the products would be used, not left in discarded containers. For that reason, because any residues of such products in discarded containers has not been shown to be other than minuscule, because none of the products is listed as a HS by EPA and because mere presence of an element, a named HS, as a constituent of a product does not render the product a HS, *B.F. Goodrich Company v. Murtha*, 815 F.Supp. 539, 545–46 (D.Conn. 1993), Movant's motion is granted. The coalitions' motion is denied.

### e) Connecticut Pharmacare, Inc. d/b/a Ford Pharmacy

This movant is a corporation formed to purchase, in 1987, all of the assets of Ford. Only Ford dealt with Murtha. Movant is not shown to have disposed of trash at BH or LP

through Murtha. Employees of Ford founded movant. Movant continued the business of Ford. BHC and LPC argue that movant cites no authority for excusing it, as a successor corporation, from CERCLA liability. However, they cite no convincing authority for the proposition that movant's situation warrants imposition of such liability. Further, the generic argument, based on the Brown affidavit, and the reasons discussed in d) above require granting movant's motion and denying the coalitions' motion.

#### f) Connecticut Sheet Metal Co.

Movant allegedly disposed of packaging materials, cardboard, wooden crates, paper and undescribed debris from sheet metal installation. These and wastes from machine maintenance are assertedly the source of HS. For the reasons in a) c) and d) above, movant's motion is granted and the coalitions' motion is denied.

#### g) Connecticut Waste Processing Inc.; Manafort; Dee's Refuse Inc.; Frank Perrotti & Sons, Inc.; Sanitary Refuse Co.

■ CWPI generated no trash. It transported municipal solid waste (MSW) to BH from Hamden and New Haven, as municipal generators (MG). As movant's only liability is derived from its MSW, under the equitable factors which the court must apply to any contribution, CERCLA § 113(f), any contribution from movant would be based on the same MSW for which the two MGs would be liable. Although transportation of waste brings the problem to the dump site, any HS in the trash originates with the generator. Movant, if liable, would in turn be entitled to contribution from the MGs for any HS it generated. While that right would not extinguish the coalitions' right, the coalitions are not entitled to collect twice. As those MGs are below found not liable, CWPI's motion is granted. The coalitions' motion is denied.

Dee's Refuse, Inc. is claimed to have hauled household waste (HW) and unspecified commercial site refuse, and thus HS, to BH, based on the Brown affidavit. This is not substantiated as discussed in a), c), and d).

Frank Perrotti & Sons, Inc. is alleged to have hauled to BH unspecified MSW from apartment houses, offices, industrial sites and restaurants, identified as containing HS by the Brown affidavit.

■ Sanitary Refuse Company, Inc. (SRIC) was incorporated as F.P.J. Refuse Service, Inc. on November 12, 1987. On March 2, 1988, FPJ purchased the assets, name and business of a previously existing corporation, The Sanitary Refuse Company, Inc. (TSRCI), incident to which TSRCI and its shareholders, who are unrelated to FPJ, covenanted not to compete with FPJ. On March 2, 1988, FPJ changed its name to SRIC and commenced to conduct TSRCI's business, using its former assets, employees and customers. All of the waste disposed of, on which the claim herein is made, was brought to BH prior to May 1979. The customers are not identified nor is there evidence for the basis on which HS is alleged to have been disposed of at BH except the Brown affidavit. SRIC is described, conclusorily as a successor corporation to TSRCI. Though asserting that the characteristics of SRIC are those "identified by the various courts that have considered successor liability," BHC and LPC memorandum § S2, the only authority cited is *Turner v. Bituminous Casualty Co.*, 397 Mich. 406, 244 N.W.2d 873, 883 (1976). Absent convincing authority, successor liability cannot be found to be lawfully imposable on SRIC.

Further to be considered as to the transporters are their arguments that they have not been shown to have disposed of specifically identified HS found at the sites, that they were directed to the sites or transfer stations by others and that they have not been shown to have acted as to be liable under either Conn.Gen.Stat. § 22a–452 or the common law and thus are not liable for contribution under CERCLA as claimed. None of these claims have been briefed in opposition to the transporters' motions. The transporters' motions are granted and the coalitions' motion is denied.

#### h) Crelan Construction Company

The record reflects no evidence that movant disposed of HS at BH or LP. Its motion

is granted and the claim against it is dismissed.

### i) D'Addio's Auto Parts

For the reason discussed in h) above, this motion is granted.

### j) Derby Tire Co., Inc. (Whip–It Tire Division)

■ Movant disposed of scrap tires through the Murtha sites. Per the Brown affidavit, tires (generically) contain methyl ethyl ketone, toluene, phenol, chromium and lead. Tires are not listed as HS by EPA. Nothing offered shows that HS in tires contributes to the conditions at either site which give rise to CERCLA liability. *See B.F. Goodrich v. Murtha*, 815 F.Supp. at 545–46. Accordingly movant's motion is granted and the coalition motion is denied.

### k) First National Supermarkets

As the argument that no claim is asserted against it in the amended complaint is not controverted, the motion to dismiss is granted on that ground. Movant notes that the claim was originally against FNS–Naugatuck, not movant.

### l) Horizon Homes Limited Partnership

■ This movant owned and leased 12 apartment buildings, the waste from which was removed by Murtha. The only specification of the waste is that it included containers for Clorox, floor, nail and furniture polish and remover, cosmetics, pesticides and traps, waxes, cleaners, soap, ammonia and shampoo. As discussed in c) above, these products are used, with the empty containers being discarded in the normal course. The claim, founded on the Brown affidavit, does not warrant a finding of any evidence that anything but minuscule residues would be found in the empty containers. As discussed in c), no basis is provided for a finding that what movant disposed of included HS. Accordingly movant's motion is granted and the coalitions' is denied.

### m) Hospital Marketing Services, Inc.

This TPD is alleged to have generated office waste and waste material related to its manufacturing and packaging of hospital products, supplies and instruments, the composition of which is not shown. None of such products are listed as HS by the EPA. Based solely on the Brown affidavit, which does not identify the composition, it is alleged that the waste included acetone, phenol, xylenes, trichloroethane and diethyl phthalate. For the reasons discussed in a), c), and d) above, the motion is granted and the coalitions' motion is denied.

### n) Jacob Brothers, Inc.

A corporation by the forgoing name was incorporated in 1925 and became known as Brothers Scrap, Inc. In 1987 Connecticut Iron and Metal, Inc. was incorporated and in 1988 it acquired, in a two-step transaction with another corporation, part of Brothers' assets, including the name Jacob Brothers, Inc. It then assumed that name. It assumed none of Brothers' liabilities except as specified. No CERCLA liability was so specified. It received a right to indemnification for any liability of Brothers. Brothers has since dissolved. The disposal claimed occurred in 1973–74. Movant's evidence suggests the absence of any disposal through Murtha by Brothers. The evidence does not support a finding that Brothers disposed of waste through Murtha. The Murtha documents rather suggest scrap purchases from Murtha, but that would pose a question of fact. For the reasons discussed in b) and d) as to successor liability, the motion is granted and the coalitions' motion is denied.

### o) Litton Industries, Inc.

■ This TPD allegedly disposed of HS from its Winchester Electronics division whose five plants of waste through Murtha. The coalitions identify wastes from which specific HS, based on the Brown affidavit, allegedly were disposed of at BH. General office waste cannot be found to be the source of HS, as the Brown affidavit does not specify the specific material thus disposed of which contained HS. As HS in the form of components and general waste cannot be a

ground for imposing liability, no basis for imposing liability on that score has been demonstrated. However, there is enough evidence and specificity of HS as to the materials disposed of to preclude summary judgment in favor of Litton. However the coalitions' motion cannot be granted, as a question of fact is present. Its motion for sanctions will also be denied, as sanctions are not warranted.

p) Lombard Brothers, Inc./North Penn Transfer, Inc.

Lombard Brothers, Inc. conducted a general freight transfer business until 1984 when it was acquired by North Penn Transfer, Inc. The nature of the transfer is not disclosed. The affidavit in support of the motion suggests that the nature of the business was such that Lombard did not generate HS. The affidavit is not controverted and the motion of Lombard is therefor granted.

North Penn Transfer, Inc. filed a petition in bankruptcy on February 10, 1992 and therefor any claim against it is stayed by virtue of 11 U.S.C. § 362. Accordingly the claim against North Penn will be dismissed without prejudice subject to renewal in the event the stay is lifted and pursuit of the claim in this court is deemed efficacious.

q) McDonald's Corporation

There is no such corporation existing under Connecticut law. There is, apparently such a corporation existing elsewhere than Connecticut, but it is not reflected as registered to do business in Connecticut. The McDonald's restaurant in Naugatuck where service of the complaint is purported to have been made by mail is not operated by McDonald's Corporation. Summonsed and named in the complaint is McDonald's Restaurant. Without addressing the issue of personal jurisdiction or the proper naming of McDonald's Corporation, the coalition dismisses the problem as "purely procedural issues" and seeks sanctions for non-compliance with disclosure requirements. The latter puts the cart before the horse. Until validly brought before the court, there is no obligation to respond to court procedures.

For want of any valid opposition to the motion to dismiss, it is granted.

r) Meyers & Schwartz, Inc.

This corporation came into existence in 1981 when it purchased, in compliance with the Connecticut Bulk Sales Act, Conn.Gen. Stat. § 42a–6–101 et seq., a business operated by three unrelated persons. It sold and repaired tires. The claim here is premised on disposal, between 1973 and 1977, of tires which allegedly contained HS. For the reasons discussed in j) above, movant's motion is granted and the coalitions' motion is denied.

s) Municipal Generators (MG)

██ This group includes Beacon Falls, Bethany, Connecticut Resource and Recovery Authority, Hamden, Killingworth, Middlebury, Milford, New Haven, Orange, Plymouth, Seymour, Stratford, Thomaston, Waterbury and Westport. Their motion is based on the absence of identification of any specific HS listed under 42 U.S.C. § 9601(14) contained in the waste they caused to be disposed of in BH or LP. They contend that only by disposal of specified HS can they be liable to contribute to the remediation cost. The coalition does not dispute that argument but contends that it has so specified and has provided evidence based on which it could reasonably be found that disposal of HS by the group occurred. There is no direct evidence that any municipality's disposal contained particularly identified HS. The coalition relies on the Brown affidavit which summarizes the author's study of MSW from which he concludes that the make-up of the MSW he studied leads to the reasonable conclusion that MSW, generally, contains certain amounts of certain HS.

██ Movants concede that MSW may include materials which contain elements or components listed by EPA as HS. The argument is thus whether contribution liability can be based on disposal of items not named as HS by EPA, but which contain components or elements which are so named. If so, there is a further question whether it must be shown that any such component or element separates out of the material in which it is contained, for there must be a

release or threatened release of the HS. "[S]ubstances listed as hazardous ... become statutorily defined as hazardous substances.... And the release of them or any constituent of them invokes the response provisions...." Senate Rep. No. 96–848, 96th Cong., 2d Sess. at 24–27 (July 13, 1980), U.S.Code Cong. & Admin.News 1980, at 6119. Contribution liability requires: 1) disposal of a HS, 2) at a site where the HS is found, 3) release or threatened release of the HS, and 4) incurral of remediation costs. *Violet v. Picillo,* 648 F.Supp. 1283, 1289 (D.R.I.1986), *aff'd,* 883 F.2d 176 (1st Cir. 1989). The HS for which responsibility lies is defined in 42 U.S.C. § 9601(14) and requires proof that "waste contains an unspecified quantity of substances designated as hazardous or toxic under the statutes specified in [§ 9601(14)]." *United States v. Wade,* 577 F.Supp. 1326, 1340 (E.D.Pa.1983). Thus it is necessary that the HS be listed as such. Only EPA is authorized to list HS. 42 U.S.C. § 9602. Deference is due EPA's interpretation of CERCLA and adoption of regulations construing CERCLA. *B.F. Goodrich v. Murtha,* 958 F.2d 1192, 1205 (2d Cir.1992). Liability does not lie if the material disposed of would release a HS only on the intervention of another force. *U.S. v. Serafini,* 750 F.Supp. 168, 171 (M.D.Pa.1990). The question here is whether there is a substantial issue of fact, based on evidence in the record, as to MGs having disposed of HS. The coalition relies on the Brown affidavit as such evidence, claiming that MSW, as a general rule, is thereby shown to contain HS.[1] Dr. Brown's affidavit, attached to the coalition's memorandum, in appendix B lists the various types of products found in MSW, none of which are listed as HS by EPA. Though he does not differentiate the components of such among brands, he lists HS attributable to the products. He thus provides a basis from which it could be found that the MSW he studied contained such products and that in turn such products contained, as components or elements, the HS he lists.

■ The fact that waste contains items which were made with, by use of, or incorporated components or elements which constituted or in turn contained HS is not a sufficient basis for finding that disposal of such waste constitutes disposal of HS. *B.F. Goodrich v. Murtha,* 815 F.Supp. 539, 545–46 (D.Conn.1993). BHC has provided no analysis or authority to the contrary.

The next question is whether Brown's affidavit is sufficient to permit an inference that one or more of the MGs disposed of HS at BH.[2] From the reports of HS found in MSW on which Brown relies, BHC claims an inference that all MSW contains comparable amounts of those HS and that the MGs' MSW contained such HS. Appendix B of the Brown affidavit lists "common products contained routinely in the waste streams of typical households, commercial establishments, institutions and industries ... and [ ] the CERCLA [HS] found in each of these products." Brown, p. 9. There is no evidence that any MG's MSW came from the four sources cited by Brown. Brown further notes that products such as he lists will degrade/decompose "under normal landfill conditions" which he does not define. The soundness of BHC's claim must be judged based on the Brown affidavit. Neither the complaint nor the record created for deciding the summary judgment motions identifies a specific HS in the MSW of any MG. A motion for summary judgment challenges not the adequacy of the complaint but whether evidence supports the claim. That requires scrutiny of the Brown affidavit against the backdrop of the EPA Municipal Policy that a MG would not be charged as a PRP absent evidence that its waste deposited at the site in question contained specific HS. 54 Fed. Reg. 51,071, 51,075 (Dec. 12, 1989). The question was not resolved by the earlier decision on the MGs' motion for summary judg-

---

1. The coalitions' reliance on *B.F. Goodrich Co. v. Murtha,* 754 F.Supp. 960, 972 (D.Conn.1991), *aff'd,* 958 F.2d 1192, 1197 (2d Cir.1992) is misplaced. This court's consideration of the Brown affidavit there did not reach its evidentiary efficacy, nor did the Court of Appeals.

2. Supporting and opposing affidavits shall be made on personal knowledge, shall set forth facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Rule 56(e), Fed.R.Civ.P.

ment, when the focus was not on the existence of evidentiary support for the claim of HS in the waste MGs disposed of, but rather on their liability under CERCLA for disposal of MSW. *See B.F. Goodrich v. Murtha,* 754 F.Supp. at 962. It was assumed for the determination of that motion that MSW contained HS on the basis of Brown, but the validity of Brown as evidence was neither analyzed nor scrutinized.

Without passing on the admissibility of Brown's opinion as adequately founded expertise, *see Daubert v. Merrell Dow Pharmaceuticals, Inc.,* — U.S. ——, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), what is apparent is that no adequate foundation has been laid for Dr. Brown's opinion to be applied to the MGs. He notes reliance on some materials previously held inadequate to establish a defendant's remediation liability, *B.F. Goodrich Co. v. Murtha,* 815 F.Supp. at 545–46. His other sources are not shown to warrant his finding of unspecified HS in the MSW of particular MGs. His references to facts, without specification, in various documents relied on, are insufficient to make his opinions relevant to each or any of the particular MGs. *See Pierson Sand & Gravel, Inc. v. Pierson Township,* 1990 WL 359058 (W.D.Mich., March 2, 1990). His affidavit is "at once second hand and factually sparse." *Chandler v. Coughlin,* 763 F.2d 110, 113 (2d Cir.1985). The following observations are pertinent:

1) The coalition's Appendix A conclusorily states MGs' liability, their disposal of MSW containing HS, relying on Brown. Thereby Brown relies on Brown.

2) Cited affidavits and particular MG's UDO compliance are not shown to be probative of actual or inferred presence of HS in an MG's MSW.

3) The UDO compliances of Uniroyal, Murtha and the BHC are not shown to be probative of actual or inferred presence of HS in an MG's MSW.

4) Many factors cited to support claims for contribution are subject to the comments concerning relevance and probative value in *B.F. Goodrich v. Murtha,* 815 F.Supp. at 544–46.

5) Waste generation is used by BHC interchangeably with disposal, ignoring MGs' evidence of arrangements for suspect materials disposal other than at BH.

6) MGs claim spot checks of MSW for materials Brown cites as sources of HS. Such checks, though no guarantee of the absence of HS, substantially undercut his claim of HS in all MSW.

7) BHC claims disposal by MGs at BH despite their disposal through Murtha only after BH was closed.

8) The insufficiency of proof of the presence of HS in the trash of specific businesses based on the type of business they conducted is equally applicable to the MGs which picked up their trash.

9) Brown has suggested that tires will release HS but provides no basis for that opinion. He opines that construction waste contains ten different HS, with no sufficient basis for such being found in the MGs' waste.

Accordingly the MGs' motion is granted. The coalitions' motion is denied.

t) Neal Hennessey d/b/a Neal's Coffee Shop

Movant disposed of used, empty, cleansing agent containers and styrofoam products, not cleansing agents themselves, from which BHC claims disposal of diethyl phthalate. Its motion is granted. The coalitions' motion is denied.

u) NRS Carting Co., Inc.

BHC alleges successor liability in movant for the disposal of used tires by Norwalk Service, Inc. No meaningful memorandum has been submitted by the coalitions. As discussed above as to disposal of tires and successor liability, and for the further reason that movant has shown, without contradiction that it came into existence after the disposal by Norwalk Service, Inc. and only purchased limited assets of Norwalk Service, Inc., the motion is granted.

v) Old Corner Cafe, Inc.

The only evidence of waste disposed of by this movant does not constitute a basis for

finding that it disposed of HS, for the reasons set forth in t) above. Its motion is granted. The coalitions' motion is denied.

### w) P. Francini, Inc.

The record reflects no evidence of disposal of HS at BH or LP by this party. Its motion is granted and the case against it is dismissed.

### x) Plume & Atwood Industries, Inc./Diversified Industries, Inc.

Plume & Atwood (P & A) is a division of Diversified. Its denial of any disposal of HS at BH is on the basis that any HS generated by its manufacturing process were otherwise disposed of than through Murtha. BHC's only claim of evidence is that P & A's trash hauled by Murtha included graphite bags and used office supplies residue, characterized by Brown as a source of HS. For the reasons discussed herein, Brown's affidavit is insufficient as a basis for finding HS was disposed of by P & A. Its motion for summary judgment is granted and the coalitions' motion is denied. That movant may not be subject to a CERCLA claim is not a jurisdictional defect warranting dismissal. That motion is denied.

### y) Portanova, Inc., aka Portanova Trucking Co.

The record reflects no evidence of disposal of HS at BH or LP by this movant and accordingly its motion is granted.

### z) Portuguese Club, aka Clube Uniao Portuguesa

Movant is a social club. There is evidence of disposal through Murtha of glass and paper waste, empty cleanser and fertilizer containers and garbage, but no HS. This is insufficient to permit a finding of disposal of HS. Its motion is granted. The coalitions' motion is denied.

### aa) SCR, Inc.

No record is established which would warrant finding this movant disposed of HS at BH or LP. Accordingly its motion is granted.

### bb) Seymour Brass, Inc.

Contribution is claimed from Seymour as successor to Seymour Brass Turning Co. on the basis of its purchase of assets and continuation of the Turning Company's business. There is no showing of identity, and no convincing authority is cited for the proposition that one entity, unrelated to another except as a buyer of assets and business, should be liable for the conduct of the other in disposing of HS. Seymour's motion is granted. The coalition motion is denied.

### cc) Shore's Auto Parts

The record contains no evidence of disposal of HS at BH or LP by movant. Accordingly its motion for summary judgment is granted.

### dd) Stauffer Chemical Company

In a transparent effort to paint this TPD bleakly, BHS describes it as a manufacturer of chemicals. In fact the waste it disposed of through Murtha came from an office facility which generated waste paper, office supply containers, burned light bulbs, empty cleanser, paint and maintenance material containers and garbage. None of these warrant the finding of disposal of HS at BH or LP. Stauffer's motion is therefor granted. The coalitions' motion is denied.

### ee) Steve's Tire & Battery Salvage

Movant concedes disposal of tires through Murtha. As discussed above, tires are not HS, and thus there is no basis for finding movant disposed of HS at BH or LP. Its motion is granted. The coalitions' motion is denied.

### ff) Stop & Shop Supermarket Company

Movant allegedly disposed of plastic, food waste, shipping containers, wood, packaging, unspecified damaged products and general office trash. This is insufficient as a basis to find that movant disposed of HS at BH or LP. Its motion is granted. The coalition motion is denied.

**gg) Trowbridge Apartments**

This movant allegedly disposed of household trash from 33 apartments over an unspecified period "during the 1970's." The trash allegedly consisted of cleanser containers and papers, which does not provide a basis for finding the disposal of HS at BH or LP. Accordingly, movant's motion is granted and the coalitions' motion is denied.

**hh) Valley Mobile Homes Park/Valley Motor Trailer Sales**

As household trash is all that was disposed of, these movants' motions are granted for the reasons in gg). BHC's motion is denied.

**ii) Waterbury Companies, Inc./Time–Mist, Inc.**

Movant concedes disposal, through Murtha, of floor sweepings from its plastic molding, brass stamping and aerosol dispensers plant. Metal waste was salvaged and sold, but plastic scrap, paper, food waste and office trash was disposed of through Murtha. Liquid waste was not. Though BHC notes the use of HS in movant's processes, there is no evidence of the disposal of any such through Murtha. Movant's motion is granted. The coalitions' motion is denied.

**jj) WPM, Inc.**

The record is devoid of evidence of disposal of HS at BH or LP. That attorney Seiger stalled a deposition, noticed 6 days before the discovery deadline, does not excuse a failure to deal with this motion. Rule 37, Fed.R.Civ. P., provides any solace due. Movant's motion is granted.

**kk) Zollo Drum Company, Inc. (ZDC)**

This TPD was incorporated in 1984, after BH was closed. A prior sole proprietorship was conducted under a comparable name by Richard Zollo. Richard sold the business and related assets to ZDC on December 13, 1984. Anthony Zollo, son of Richard, is president of ZDC. Stock ownership, officerships and directors have not otherwise been put into the record. As a distinct entity is involved and BHC has not cited convincing authority for its claim of successor liability,

ZDC's motion is granted. The coalitions' motion is denied.

### DISPOSITION OF ANY REMAINING THIRD PARTY CLAIMS

With the multiplicity of parties, enormity of pleadings and dismissal of some third party claims by stipulation, it is possible that some TPDs' dispositive motions have not, by the forgoing, been resolved. The court has followed BHC's opposition in making the forgoing rulings. To clear the record, the coalitions shall, within 10 days of this order, file a list of third parties against whom it is claimed that claims remain which the coalitions intend to pursue. In doing so the coalitions shall be sure that the rulings herein and Rule 11 are fully considered and accommodated.

*Conclusion*

The motion by Jacob Brothers, Inc. to dismiss (doc. # 2116) and the motion by Seymour Brass, Inc. (doc. # 2097) for summary judgment are granted. The motions by Borghesi Construction (doc. # 2127) and Nastro, Inc. for summary judgment (doc. # 2118) are denied as moot, as stipulations of dismissal have been entered as to those parties. The remainder of the motions decided *supra* are not docketed.

SO ORDERED.