The **TOWN OF NEW WINDSOR and The State of New York, Plaintiffs,**

v.

**TESA TUCK, INC. and Lightron Corporation, Inc., Eugene Littman, Harry Basch, Mearl Corporation, and Kollmorgen Instruments Corporation, Defendants.**

**TESA TUCK, INC. and Lightron Corporation, Inc., Third– Party Plaintiffs,**

v.

The **UNITED STATES of America, James S. Patsalos, James S. O'Neill, Charles T. Kavanagh, Cornell Group Service Corp., The New York State Department of Transportation, City of Newburgh, and The New York State Thruway Authority, Third–Party Defendants.**

No. 92 CV 8754.

United States District Court, S.D. New York.

July 17, 1996.

Kimberly Shaw Rea, Bleakley Platt & Schmidt, White Plains, NY, for Plaintiff.

Nicholas Z. Hegedus, Kiefferr and Hahn, New York City, for Defendant, Third Party Plaintiff and Cross Claimant Tesa Tuck.

Robert Emmet Hernan, Asst. Atty. Gen., N.Y.S. Department of Law Environmental Protection Bureau, New York City, for Third Party Defendants N.Y.S. Thruway Authority, the N.Y.S. Dept. of Transportation and the State of New York.

Edwin Eisen, Eisen, Herschcopf & Schulman, New York City, for Third Party Defendant Mearl Corporation.

Donna Frosco, Keane & Beane, White Plains, NY, for Defendant and Third Party Plaintiff Lightron Corporation.

Gideon A. Schor, Asst. U.S. Atty., New York City, for Third–Party Defendant U.S.

## MEMORANDUM DECISION AND ORDER

PARKER, District Judge.

This action under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9601, *et seq.*, as amended by the Superfund Amendments and Reauthorization Act of 1986 ("SARA"), P.L. 99–499 (October 17, 1986), and state law is before this Court on the motion of third-party defendant, the City of Newburgh, for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Familiarity with the facts and this Court's prior decision of March 14, 1996 is assumed. Third-party plaintiffs have asserted CERCLA § 113(f) claims for contribution against Newburgh, based upon Newburgh's disposal of hazardous substances at the New Windsor landfill. Newburgh moves for summary judgment on the ground that third-party plaintiffs have produced no evidence demonstrating that it disposed or arranged for the disposal of hazardous substances at the landfill.

Rule 56 of the Federal Rules of Civil Procedure authorizes summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The Court's responsibility is to perform "the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *McNeil v. Aguilos,* 831 F.Supp. 1079, 1082 (S.D.N.Y.1993) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1985)); *Western World Ins. Co. v. Stack Oil, Inc.,* 922 F.2d 118, 121 (2d Cir.1990). In determining whether a genuine issue of material fact exists, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. See *McNeil,* 831 F.Supp. at 1082 (citing *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 993–94, 8 L.Ed.2d 176 (1962) (per curiam) (other citations omitted)). *See also Coach Leatherware Co., Inc. v. AnnTaylor, Inc.,* 933 F.2d 162, 167 (2d Cir.1991) (citations omitted).

Liability under CERCLA is imposed where a plaintiff establishes the following five elements: (1) the defendant falls within one of the four categories of "responsible parties" enumerated in § 107(a); (2) the site of the clean-up is a facility under § 101(9); (3) there is a release or threatened release of hazardous substances at the facility; (4) as a result of which plaintiff has incurred response costs; and (5) the costs incurred conform to the national contingency plan ("NCP") under § 107(a)(4) as administered by the EPA. See *U.S. v. Alcan Aluminum Corp.,* 990 F.2d 711, 719–720 (2d Cir.1993) (*citing B.F. Goodrich Co. v. Murtha* ("*Murtha I*"), 958 F.2d 1192, 1198 (2d Cir.1992)).

Under § 107(a), a "responsible party" includes:

> (3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances, and
>
> (4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person,
>
> . . .

42 U.S.C. § 9607(a).

In order for a defendant to be within the class of covered persons under § 107(a)(3) or (4), the plaintiff must prove that defendant transported or arranged for the disposal of hazardous substances, as defined by CERCLA § 101(14),[1] at the facility; the plaintiff

---

1. CERCLA defines the term "hazardous substance" as: (a) any substance designated pur-

must prove that the waste transported to or disposed of at the facility contained hazardous substances. *See Murtha I*, 958 F.2d at 1200–1201. Third-party plaintiffs assert that Newburgh generated three hazardous substances that were disposed of at the landfill: incinerator ash, combustible refuse and debris, and tires. Newburgh argues, first, that these substances are not hazardous, and second, that there is no evidence the Newburgh disposed of these substances at the landfill. I review the evidence for each substance in turn.

### a. *Incinerator ash*

█ Third-party plaintiffs argue that the fact that Newburgh generated incinerator ash is shown by a letter, dated August 16, 1965, from Thomas Rose, City Manager of Newburgh, to George Manuche, Supervisor of New Windsor. *See* Exhibit D. The letter states "I am enclosing herewith a draft of a lease for a piece of property in the Town of New Windsor that the City desires to use for disposing of non-combustible refuse and incinerator ash. . . . I would appreciate some acknowledgement by you that the Town of New Windsor would have no objection to the City using this land." The draft lease describes property owned by Rudy DiNitto located on Route 9W. The draft lease was not executed.[2]

That incinerator ash at the landfill contained a hazardous substance is shown, third-party plaintiffs argue, by the expert report of Dr. Robert Harris. *See* Exhibit J. Dr. Harris states that "[t]he contaminant group, PAHs, that have impacted soil/sediment in the leachate collection area, can be attributed to many sources at NWLF (e.g., residue from the burning/incineration of municipal refuse and highway runoff)." Dr. Harris

also states "[a]nother PAH source at NWLF is the fill material. In the southern portion of NWLF, identified in the RI/FS as the area of oldest fill, 'much of the material consisted of burned municipal waste and construction debris' (RI/FS 1991, vol. 1, p. 3–12). The Federal Agency for Toxic Substances and Disease Registry states that 'PAHs are a group of chemicals that are formed during the incomplete burning of coal, oil and gas, garbage, or other organic substances' (ATSDR 1990, p. 1)." Finally, Dr. Harris states a "1987 USEPA study characterizing municipal combustor ashes from municipal solid waste landfills concluded from a literature survey and from field studies that 'polyaromatic hydrocarbons (PAHs), phthalates, cholrobenzenes and chlorophenols are the most prevalent types of compounds found in MWC [municipal waste combustion] ashes' (USEPA 1987, p. 2–19)."

That Newburgh disposed of incinerator ash at the landfill is demonstrated in part, third-party plaintiffs argue, by the RI/FS, which states that "[i]n the southern portion of the landfill (area of oldest fill), much of the material consisted of burned municipal waste and construction debris." Exhibit I. Third-party plaintiffs assert that Exhibit D establishes that Newburgh sought to dump incinerator ash in New Windsor during the "oldest" time of the landfill (1965). Thus, third-party plaintiffs argue, Exhibits I and D together establish that the old "burned municipal waste" is Newburgh's incinerator ash. Third-party plaintiffs argue that the connection is confirmed by the minutes from the Regular Town Board and Water Meetings of December 17, 1969, August 4, 1971 and October 6, 1971. *See* Exhibit O. The minutes reveal that various contractors requested permission to dump urban renewal debris

suant to section 1321(b)(2)(A) of Title 33, (B) any element, compound, mixture, solution, or substance designated pursuant to section 9602 of this title, (C) any hazardous waste having the characteristics identified under or listed pursuant to section 3001 of the Solid Waste Disposal Act [42 U.S.C.A. § 6921] (but not including any waste the regulation of which under the Solid Waste Disposal Act [42 U.S.C.A. § 6901 et seq.] has been suspended by Act of Congress), (D) any toxic pollutant listed under section 112 of the Clean Air Act [42 U.S.C.A. § 7412], and (F) any imminently haz-

ardous chemical substance or mixture with respect to which the Administrator has taken action pursuant to section 2606 of Title 15 . . . . 42 U.S.C. 9601(14).

2. In fact, the request appears to have been denied. The Town minutes for 2/2/66 state "[m]otion carried to deny the request from the City of Newburgh to dump incinerator ashes on property owned by Rudy DiNitto located on Route 9 W." *See* Exhibit F.

from Newburgh on private property in New Windsor. The requests were all denied due to previous burning problems experienced with "this type of debris."

Third-party plaintiffs' showing is unpersuasive. There is no evidence demonstrating that Newburgh dumped incinerator ash containing PAHs at the landfill. *See B.F. Goodrich Co. v. Murtha ("Murtha III")*, 840 F.Supp. 180, 188–89 (D.Conn.1993). All of the requests for permission to dump urban renewal debris or incinerator ash were denied, or they pertained to dumping on private property, not the landfill. There is some evidence that Newburgh generated incinerator ash in 1969. There is some evidence that incinerator ash containing PAHs was dumped at the landfill in the late 1960s or early 1970s. But there is no evidence that Newburgh disposed of its incinerator ash at the landfill.

### b. *Combustible Refuse and Debris*

■ Newburgh's generation of combustible refuse and debris, third-party plaintiffs argue, is shown by the 1967–69 Newburgh Comprehensive Development Plan, which documents the demolition of commercial and residential buildings in Newburgh in the 1960s. *See* Exhibit M, pp. 129–132. Third-party plaintiffs also point to the deposition testimony of John Conrad, Newburgh's own expert witness. Conrad testified that roofing materials, pitch, tar paper, coal, fuel oil, and asphalt under certain conditions could sometimes be a source of PAHs. He speculated that one could expect to find some of these materials in residences built in the late 1800s and early 1900s. *See* Exhibit 1, pp. 31–37.

Newburgh's disposal of demolition refuse and debris at the landfill is also said to be reflected in the New Windsor Town Clerk's daily sheets documenting the issuance of dump permits to Newburgh in September 1967 and August 1969. *See* Exhibits E and H. Third-party plaintiffs also point to a letter dated July 10, 1969 from Jack Present,

Acting Executive Director of the Newburgh Urban Renewal Agency,[3] to Marsden, New Windsor Town Supervisor, requesting authority for the Frank Frontino Excavating Company, a contractor under contract with the Newburgh Urban Renewal Agency, to dump trash and debris resulting from demolition work at the landfill. *See* Exhibit G. Finally, third-party plaintiffs rely on New Windsor Town Board minutes stating "Motion carried to deny the request from the City of Newburgh to dump incinerator ashes on property owned by Rudy DiNitto located on Route 9 W ... 2/2/66"; "Motion carried to authorize the Comptroller to bill the City of Newburgh for work done by the Town Highway Department with reference to dumping at the Town Dump ... 8/2/67"; "Upon recommendation from the Highway Supt., the Town Attorney was authorized to see if anything could be done re: Purchase of approximately five acres in the area of the Town Dump from the City of Newburgh, since binds for this to be opened on 4/21/69 ... 4/16/69"; "Letter dated July 10, 1969 received from the Newburgh Urban Renewal Agency regarding dumping was removed from the Agenda. Discussion re: Town Dump ... 8/6/69"; and "Request rejected re: from Artko Wrecking and Lumber Co., Inc. to dump debris from the Urban Renewal Project in the Town of New Windsor ... 10/6/71." Exhibit F.

Again, third-party plaintiffs have failed to produce any evidence upon which a reasonable jury could find that Newburgh disposed of hazardous substances at the landfill. While there is some evidence that Newburgh dumped demolition trash and debris at the landfill, there is no evidence that this material contained hazardous substances. Conrad testified hypothetically as to the types of materials that might contain PAHs and whether these materials might have been present in Newburgh's demolition debris. Because Conrad's testimony was speculative,

---

**3.** The Newburgh Urban Renewal Agency was allegedly established by the New York State Legislature, independent of the City of Newburgh, and was responsible for a number of urban renewal projects in Newburgh. For the purposes of this motion, Newburgh is treating the alleged liability of Newburgh and the Newburgh Urban Renewal Agency as identical, but reserves the right to assert in further proceedings that Newburgh and the Newburgh Urban Renewal Agency are separate entities without liability for each other.

unsupported by factual basis, it does not have probative value and is insufficient to create a genuine issue of material fact to survive summary judgment. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589–90, 113 S.Ct. 2786, 2795, 125 L.Ed.2d 469 (1993); *Dana Corp. v. American Standard*, 866 F.Supp. 1481, 1499 (N.D.Ind. 1994). Moreover, courts have rejected the proposition that combustible materials, such as construction debris, may be considered hazardous substances merely because they may generate PAHs when burned. *See Murtha III*, 840 F.Supp. at 188; *United States v. Serafini*, 750 F.Supp. 168, 170–71 (M.D.Penn.1990).

### c. *Tires*

■ Third-party plaintiffs argue that Newburgh's generation of tires is shown by a letter, dated April 18, 1974, from M. Fisher, allegedly the New Windsor Town supervisor, to the Newburgh Urban Renewal Agency, advising it "that Mr. Nicholas Antonelli of Ginella Contracting Corporation, New Windsor, has been authorized by the Highway Superintendent of the Town of New Windsor, to dump 25 loads of tires at a location of the Town of New Windsor dump designated by the Highway Superintendent." Exhibit L.

That tires are a hazardous substance is shown by, third-party plaintiffs argue, the RI/FS (vol. 1), which states "[t]he fill material predominantly consisted of solid waste (plastic, glass, paper, cans, waste such as tires, assorted metals, fabric remnants, rolls of what appeared to be unused filters, and rolls of black and occasionally blue carbon paper were also found in the test pits throughout the NWLF)." Exhibit 2. Third-party plaintiffs also argue that "[t]ires, being a petroleum based product, are well known to contain several hazardous substances (including pah's, especially when burned ...)."

Even assuming that Exhibit L establishes that Newburgh disposed of tires at the landfill, third-party plaintiffs have not demonstrated that tires are a hazardous substance under CERCLA. Third-party plaintiffs have not shown that tires are listed by the EPA as a hazardous substance, *see* 42 U.S.C. § 9602. In fact, courts have found that tires are not

CERCLA hazardous substances. *See Berry v. Armstrong Rubber Co.*, 989 F.2d 822, 826 (5th Cir.1993), *cert. denied, Cooper v. Armstrong Rubber Co.*, 510 U.S. 1117, 114 S.Ct. 1067, 127 L.Ed.2d 386 (1994); *Murtha III*, 840 F.Supp. at 186, 190. The RI/FS does not show that tires contributed to the conditions at the landfill which give rise to CERCLA liability. It merely includes tires in a list of types of waste found in test pits at the landfill, and makes no assertion that tires generate hazardous waste.

In conclusion, Newburgh's motion for summary judgment is granted.

SO ORDERED.